[This decision has been published in *Ohio Official Reports* at 96 Ohio St.3d 1.]

KOSTELNIK, EXR., APPELLANT, *v*. HELPER ET AL., APPELLEES.

[Cite as *Kostelnik v. Helper*, 2002-Ohio-2985.]

*Civil actions—Wrongful death—Settlement agreement not enforceable, when.*

(No. 2000-2236—Submitted December 12, 2001—Decided July 3, 2002.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 76809.

_____

LUNDBERG STRATTON, J.

{¶1} On June 9, 1995, appellant, Michael R. Kostelnik, Jr., as executor of the estate of Jacqueline M. Kostelnik, filed a wrongful-death action against appellee Steven D. Helper, M.D., and appellee Meridia Hillcrest Hospital. The complaint alleged that Jacqueline M. Kostelnik's death was proximately caused by the negligence of Dr. Helper and Meridia Hillcrest Hospital. The trial was set for September 29, 1997. However, on that day, in the presence of the trial judge, Kostelnik agreed to settle the case against Dr. Helper and Hillcrest Hospital. Accordingly, the parties filed a "Stipulation for Dismissal and Judgment Entry," which read, "Settled and Dismissed with prejudice at Defendant's costs. No record." The judge and all the parties signed the entry.

{¶2} On September 30, 1997, counsel for Hillcrest Hospital sent a letter to Kostelnik confirming that Hillcrest was to pay $100,000 to settle the case, along with a release to be executed in exchange for the payment. On October 8, 1997, counsel for Dr. Helper sent a release for Kostelnik to execute in contemplation of a $1,100,000 payment to Kostelnik from Dr. Helper's insurer, P.I.E.

{¶3} On December 11, 1997, the probate court approved the settlement and distribution of the proceeds. On that same day, Kostelnik executed and returned the release to Dr. Helper and sought to collect the $1,100,000 from P.I.E. However, Kostelnik was unsuccessful in these collection efforts, and on December 15, 1997,

by order of the Franklin County Court of Common Pleas, P.I.E. was placed under the control of the Superintendent of the Department of Insurance pursuant to the provisions of R.C. Chapter 3903 due to P.I.E.'s financial problems. The order also stayed all actions in which P.I.E. was obligated to defend a party.

{¶4} On December 23, 1997, Kostelnik filed a motion for relief from the September 29, 1997 settlement entry as to Dr. Helper only and for judgment nunc pro tunc against Dr. Helper only in the amount of $1,100,000. Dr. Helper opposed the motion, arguing that the pending liquidation of P.I.E. required that the case be stayed. On January 13, 1998, the trial judge stayed consideration of Kostelnik's motion for relief from judgment pursuant to the P.I.E. stay.

{¶5} On February 4, 1999, after the stay against P.I.E. was lifted, the trial court placed the case back on the active docket.

{¶6} On May 14, 1999, Kostelnik withdrew his motion for relief from judgment and moved the court to reduce the settlement to a judgment against Dr. Helper and Hillcrest Hospital *jointly and severally* in the amount of $1,200,000. Both Hillcrest Hospital and Dr. Helper opposed Kostelnik's motion to enforce the judgment jointly and severally. Hillcrest Hospital also moved the court to enforce the settlement against it in the amount of $100,000 and against Dr. Helper in the amount of $1,100,000. Dr. Helper filed a brief in opposition, arguing that his settlement was predicated upon the understanding that he was covered by liability insurance that would pay the settlement. Thus, Dr. Helper requested that the court find that the settlement was null and void due to P.I.E.'s insolvency or alternatively that he may satisfy his settlement obligation by paying $300,000 available from the Ohio Insurance Guarantee Association.

{¶7} On July 27, 1999, the trial court held an evidentiary hearing to consider the two motions to enforce the settlement agreement. All the parties attended and argued the positions set out in their briefs. On August 2, 1999, the trial court issued an entry that stated:

{¶8} "Plaintiff's motion to reduce settlement to judgment against defendants jointly and severally is denied. Defendant Meridia Hillcrest Hospital's motion to enforce settlement is denied. This case is set for trial 11-17-99 at 9 a.m."

{¶9} Kostelnik appealed, arguing that the total settlement should have been jointly and severally enforced against Hillcrest Hospital and Dr. Helper. Hillcrest Hospital cross-appealed, arguing that the judgment should have been enforced against Hillcrest Hospital in the amount of $100,000 only. Dr. Helper did not participate in the appeal. The appellate court affirmed the trial court's judgment, finding that the parties never agreed to joint and several liability and finding that there was no meeting of the minds as to the terms of the settlement.

{¶10} This matter is before this court pursuant to the allowance of a discretionary appeal by Kostelnik.

{¶11} The issue before this court is whether an enforceable settlement agreement exists and, if so, what its terms are. Upon examination of the record, we find that there is an enforceable settlement agreement whereby Kostelnik settled with Hillcrest Hospital for $100,000 and separately with Dr. Helper for $1,100,000.

{¶12} Initially we address the arguments of Dr. Helper before this court. Dr. Helper filed a brief with this court arguing that "[n]either the briefs of Appellant in the trial court and Court of Appeals nor the lower court opinions address the issue of whether Dr. Stephen Helper would be personally responsible if the settlement agreement entered into by the P.I.E. Mutual Insurance Company on behalf of Dr. Helper and the appellant was enforceable" and thus "it is waived and cannot be decided by this Court." Dr. Helper goes on to argue that if the settlement agreement was enforceable, it can be enforced only against P.I.E.'s liquidator, and not against Dr. Helper personally.

{¶13} At the evidentiary hearing before the trial court to consider Kostelnik's and Hillcrest Hospital's motions to enforce the settlement agreement, Dr. Helper argued that his agreement to settle with Kostelnik was contingent upon

P.I.E. paying the $1,100,000 on his behalf, and therefore, due to P.I.E.'s insolvency, the settlement could not be enforced against Dr. Helper personally. The trial court issued an entry that merely denied both motions to enforce the settlement agreement without comment and set the case for trial. The trial court did not address Dr. Helper's issues. A motion not expressly decided by a trial court when the case is concluded is ordinarily presumed to have been overruled. *State ex rel. V Cos. v. Marshall* (1998), 81 Ohio St.3d 467, 469, 692 N.E.2d 198.

{¶14} Both Kostelnik's appeal and Hillcrest Hospital's cross-appeal included Dr. Helper as a party to the settlement agreement. However, Dr. Helper did not file a cross-appeal, and thus he failed to preserve his argument that his settlement was contingent upon P.I.E.'s paying the $1,100,000. By failing to appeal these issues to the appellate court, Dr. Helper failed to preserve for appeal the arguments that he now attempts to make in this court.

{¶15} It is preferable that a settlement be memorialized in writing. *Pawlowski v. Pawlowski* (1992), 83 Ohio App.3d 794, 798-799, 615 N.E.2d 1071. However, an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract. *Spercel v. Sterling Industries, Inc.* (1972), 31 Ohio St.2d 36, 39, 60 O.O.2d 20, 285 N.E.2d 324. Terms of an oral contract may be determined from "words, deeds, acts, and silence of the parties." *Rutledge v. Hoffman* (1947), 81 Ohio App. 85, 36 O.O. 405, 75 N.E.2d 608, paragraph one of the syllabus; see, also, *Ford v. Tandy Transp., Inc.* (1993), 86 Ohio App.3d 364, 380, 620 N.E.2d 996.

{¶16} "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Perlmuter Printing Co. v. Strome, Inc.* (N.D.Ohio 1976), 436 F.Supp. 409, 414. A meeting of the minds as to the essential terms of the contract

is a requirement to enforcing the contract. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134.

**{¶17}** "To constitute a valid settlement agreement, the terms of the agreement must be reasonably certain and clear," and if there is uncertainty as to the terms then the court should hold a hearing to determine if an enforceable settlement exists. *Rulli v. Fan Co.* (1997), 79 Ohio St.3d 374, 376, 377, 683 N.E.2d 337. However, "[a]ll agreements have some degree of indefiniteness and some degree of uncertainty. In spite of its defects, language renders a practical service. In spite of ignorance as to the language they speak and write, with resulting error and misunderstanding, people must be held to the promises they make." 1 Corbin on Contracts (Perillo Rev.Ed.1993) 530, Section 4.1.

**{¶18}** None of the parties has ever disputed that Kostelnik initially agreed to accept a total of $1,200,000 to settle this case with Hillcrest Hospital and Dr. Helper. The only issue is whether the $1,200,000 settlement was to impose joint and several liability or was merely the sum of two separate settlements.

**{¶19}** A letter from counsel for Hillcrest Hospital confirming the settlement agreement stated:

**{¶20}** "This will formally confirm the agreement * * * in the sum of $1,200,000. As I am sure you are aware the breakdown of this settlement is $1,100,000 which will be paid by PIE on behalf of Dr. Stephen Helper and Hillcrest Hospital will contribute $100,000. Further, with respect to the settlement please find enclosed that which is below described:

**{¶21}** "1. Full and Final Release for Hillcrest Hospital only in the sum of $100,000."

**{¶22}** Relying on *Wallace v. Jewell* (1871), 21 Ohio St. 163, Kostelnik asserted that two offerors who jointly promise to pay a sum of money in settlement are as a matter of law jointly and severally liable to the amount promised. Kostelnik claims that Hillcrest Hospital's letter's reference to "the agreement" "in the sum of

$1,200,000" was evidence that Hillcrest Hospital and Dr. Helper made a single agreement, thereby making them jointly and severally liable for the $1,200,000 by operation of law. *Wallace* is clearly distinguishable from this case.

{¶23} In *Wallace,* several persons signed a promissory note for $2,000. Subsequently, another party also signed the note as maker. The payee of the note argued that because the note stated, "*I* promise to pay * * *," liability went only to the first party to sign, the second party to sign was merely a surety, and thus the addition was not a material alteration. (Emphasis added.) The court disagreed and held that the pronoun "I" in the phrase "I promise to pay" did not relieve the second party from joint and several liability to the note because "I" represented the signers collectively and severally.

{¶24} In *Wallace,* there was a *note* signed by two parties for a *single sum* of money. In this case, there is no written contract and the evidence establishes that the parties agreed to pay different amounts. Therefore, we find that *Wallace* is not on point.

{¶25} Kostelnik further argues that the letter's statement that Hillcrest Hospital would "contribute" $100,000 to settle the case was evidence of a contribution agreement with joint and several liability. The mere fact that the word "contribute" was used in the letter is insufficient, as a matter of law, to prove that the parties intended joint and several liability.

{¶26} Contrary to Kostelnik's assertions, we find that the letter established that Hillcrest Hospital and Dr. Helper reached separate settlements with Kostelnik. Notably, the letter never stated that the settlement imposed joint and several liability. Rather, it indicated that Dr. Helper had settled for $1,100,000 and Hillcrest Hospital had settled for $100,000.

{¶27} The release for Hillcrest Hospital that accompanied the settlement confirmation letter and the check for $100,000 would have discharged Hillcrest Hospital from liability upon its payment of $100,000. Dr. Helper's release would

have discharged him from liability upon payment of $1,100,000 from P.I.E. Neither release was contingent upon a total payment of $1,200,000.

{¶28} Kostelnik never objected to the terms of these releases. Instead, Kostelnik sought approval of the settlement and distribution of the proceeds from the probate court. In fact, upon the probate court's approval, Kostelnik signed Helper's release and tendered it to Dr. Helper and attempted to collect the $1,100,000. Hillcrest Hospital maintains that Kostelnik still has possession of both Hillcrest's check and release although Kostelnik has not cashed the check. Kostelnik did not dispute this assertion.

{¶29} Finally, Kostelnik's December 23, 1997 motion for relief from judgment sought relief from the September 29, 1997 settlement "against Defendant Dr. Helper *only*" in the amount of "One Million One Hundred Thousand Dollars ($1,100,000)." If Kostelnik believed that the settlement had imposed joint and several liability, then he would have sought relief from the judgment in the amount of $1,200,000.

{¶30} Kostelnik argues that his motion for relief from judgment merely represented an effort to collect from Dr. Helper in light of P.I.E.'s financial troubles. Irrespective of Kostelnik's argument, his motion for relief from judgment is evidence that he settled with Dr. Helper for $1,100,000 only, and not $1,200,000 jointly and severally.

{¶31} The letter, releases, and Kostelnik's actions establish that Kostelnik settled with Hillcrest Hospital for $100,000 and that $1,100,000 was Dr. Helper's separate obligation. "Part performance under an agreement may remove uncertainty and establish that a contract enforceable as a bargain has been performed." 1 Restatement of the Law 2d, Contracts (1981), Section 34(2).

{¶32} If Kostelnik wanted the settlement to impose joint and several liability, that terminology should have been placed on the record or memorialized in some writing at the time the case was settled. It was not, and under the evidence

and circumstances in this case, we will not impose such a term on this settlement. Kostelnik's motion to enforce the settlement jointly and severally appears to be a belated effort to reach Hillcrest Hospital's deep pocket in light of the insolvency of Dr. Helper's insurer.

{¶33} Therefore, we find that there is no evidence to prove that the settlement imposed joint and several liability on Hillcrest Hospital and Dr. Helper. However, there is sufficient evidence to establish as a matter of law that Kostelnik settled with Dr. Helper for $1,100,000 and with Hillcrest Hospital for $100,000. Thus, we hold that the appellate court erred in affirming the judgment of the trial court. Accordingly, we reverse the judgment of the court of appeals and remand the cause to the trial court with instructions to enforce the settlement agreement against Dr. Helper for $1,100,000 and against Hillcrest Hospital for $100,000.

Judgment reversed<br>and cause remanded.

MOYER, C.J., and PFEIFER, J., concur.

COOK, J., concurs in judgment.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur in part and dissent in part.

_____

**FRANCIS E. SWEENEY, SR., J., concurring in part and dissenting in part.**

{¶34} I agree with the majority's conclusion that the parties entered into a valid settlement agreement. However, I respectfully dissent from that part of the decision that holds that there is no evidence to impose joint and several liability on appellees Steven D. Helper, M.D., and Meridia Hillcrest Hospital.

{¶35} The majority finds that the appellees reached separate settlements with Kostelnik. Yet I believe the evidence shows otherwise. In fact, Hillcrest Hospital acknowledged in its letter to plaintiff's counsel that the parties entered into a single settlement agreement when it stated: "This will formally confirm *the*

*agreement* reached * * * *in the sum of One Million Two Hundred Thousand Dollars* ($1,200,000). * * * Further with respect to *the settlement*, please find enclosed [the release for Hillcrest Hospital for $100,000]." (Emphasis added.)

{¶36} Despite this clear language, the majority believes that the defendants settled separately with Kostelnik and drafted separate releases accordingly. In my opinion, the fact that the defendants agreed to pay separate amounts to Kostelnik and receive separate releases does not support the majority's conclusion that separate agreements were reached. Instead, this simply shows that at the time of settlement the defendants agreed between themselves as to the proportion of money each would contribute toward the single settlement of $1,200,000.

{¶37} Further, both defense counsel for Hillcrest Hospital and for Dr. Helper conceded that the defendants were *contributing* to the single settlement. In particular, Hillcrest Hospital stated in its letter that it would "*contribute*" $100,000 toward the full settlement amount. At the evidentiary hearing on plaintiff's motion to reduce the settlement to judgment, defense counsel for Dr. Helper advised the court that "a settlement was reached where *contributions* were being made on behalf of the respective defendants." (Emphasis added.) The majority finds that the use of the word "contribute" is insufficient to prove that the parties intended joint and several liability. However, I disagree with the majority on this point.

{¶38} Contribution is a term that is regularly employed in the context of joint and several liability. See, e.g., *Motorists Mut. Ins. Co. v. Huron Rd. Hosp.* (1995), 73 Ohio St.3d 391, 653 N.E.2d 235. According to Black's Law Dictionary (7th Ed.1999) 329, "contribution" means: "1. The right that gives one of several persons who are liable on a common debt the ability to recover ratably from each of the others when that one person discharges the debt for the benefit of all; the right to demand that another who is jointly responsible for a third party's injury supply part of what is required to compensate the third party. * * * 3. The actual payment by a joint tortfeasor of a proportionate share of what is due." Thus, in my

opinion, the fact that defense counsel chose to use the term "contribute" in confirming and describing the settlement is highly relevant.

{¶39} Moreover, the affidavit of plaintiff's counsel, attached to his motion to reduce settlement to judgment, is further evidence illustrating the circumstances under which the parties settled the case. In this affidavit, plaintiff's counsel averred that he negotiated for and received a single agreement, payable by both defendants, that he did not enter into separate negotiations with either of the defendants, that during the course of negotiations, plaintiff's counsel's only concern was with the single aggregate sum, and not with the extent of participation of each defendant, and that the defendants decided among themselves the amount each would pay to the plaintiff. Clearly, this affidavit, which was never refuted, also indicates that the parties negotiated a single settlement agreement that was intended to impose joint and several liability.

{¶40} The majority, however, ignores this evidence. Instead, it reasons that Kostelnik's actions show that he never intended there to be joint and several liability. In particular, the majority states that Kostelnik initially sought relief from the dismissal order and sought judgment against Dr. Helper for $1,100,000. It reasons that had Kostelnik intended there to be joint and several liability, he would have gone after the full $1,200,000. Yet the majority fails to mention the circumstances under which this motion was filed. According to Kostelnik, the original motion was filed as a way to provide the Superintendent of the Ohio Department of Insurance, as rehabilitator for P.I.E., with a legal basis to implement Helper's obligation of $1,100,000 to judgment. Although a rehabilitator was appointed, it was not certain that no claims could be paid. However, when the common pleas court ordered P.I.E. into liquidation, Kostelnik knew that it would be futile to seek the $1,100,000 from Helper. At that point, the issue of joint and several liability arose. Kostelnik therefore withdrew his initial motion against Helper and subsequently filed his motion to reduce the $1,200,000 settlement to

judgment against Helper and Hillcrest jointly and severally. In my opinion, the actions by Kostelnik in initially seeking partial payment from Helper lend little support to the majority's holding.

**{¶41}** For the foregoing reasons, I would find that the settlement agreement imposed joint and several liability on the defendants.

DOUGLAS and RESNICK, JJ., concur in the foregoing opinion.

————————————

Chattman, Gains & Stern, Michael B. Michelson, John V. Scharon, Jr., and Dale A. Nowak, for appellant.

Weston, Hurd, Fallon, Paisley & Howley, L.L.P., Ronald A. Rispo, Daniel A. Richards and John B. Robertson; Bonezzi, Switzer, Murphy & Polito and William D. Bonezzi, for appellee Dr. Helper.

Reminger & Reminger Co., L.P.A., James L. Malone, Marilena DiSilvio, Brian D. Sullivan and Amy Fulmer Stevenson, for appellee Meridia Hillcrest Hospital.

————————————