OPINION
{¶ 1} The instant appeal has been taken from a final judgment of the Stark County Court of Common Pleas. Appellant, Alan Ralston, seeks the reversal of the trial court's order under which he is required to execute a mutual release regarding all causes of action he could bring against appellee, Daniel M. Mills. For the following reasons, this court holds that both of appellant's assignments of error lack merit.
 {¶ 2} The subject matter of the underlying case concerns the sale of timber located upon 122.206 acres of land in Stark County. As of October 1997, appellant was the owner of the land at issue. At that time, appellant hired appellee to act as his broker in the sale of the timber on this land. Approximately six months later, appellee was able to secure a willing buyer who subsequently paid appellant the sum of $15,000 for the rights to remove the timber. As his fee for finding the "timber" buyer, appellee received from appellant the sum of $2,500, consistent with the brokerage contract they had previously signed.
 {¶ 3} The "timber" transaction was not completed until April 1998. Three months earlier, appellant had entered into negotiations to sell the property in question to the Massillon Development Foundation.[1]
The negotiations resulted in an agreement in which appellant conveyed the entire tract of land to the Foundation on February 20, 1998. Despite this, when appellee told appellant two months later that he had secured a separate buyer for the timber, appellant accepted the buyer's payment of $12,500 for the timber and executed the necessary documents to transfer the rights to the timber.
 {¶ 4} Approximately seven months following the conveyance of the rights to the timber on the land, the buyer of the "timber" rights assigned those rights to appellee. Appellee then took steps to exercise those rights by employing a logging company to remove the wood from land. However, when appellee and the company tried to enter the property in May 1999, they were denied access by the Foundation on the basis that the alleged conveyance of the timber rights in April 1998 had occurred after it had bought the entire property.
 {¶ 5} When the "timber" dispute could not be resolved in six months, appellee instituted the underlying action against appellant in December 1999. In his complaint, appellee essentially asserted two alternative theories of recovery. First, appellee alleged that he was entitled to $12,500 in compensatory damages because appellant had been unjustly enriched when appellant sold the property for its full purchase price without reserving any timber rights. Second, appellee stated that he was entitled to $40,000 in damages to compensate him for his lost profits.
 {¶ 6} As part of his answer to the foregoing complaint, appellant asserted four separate counterclaims against appellee. Each of the counterclaims was based on the following allegations: (1) when appellant was negotiating the agreement concerning the sale of the land to the Foundation, he received legal advice from appellee, who is a licensed attorney in the state of Ohio; (2) in regard to the sale of the land, appellee told appellant that it was legally proper for him to proceed with both the agreement concerning the sale of the property and the brokerage agreement they had previously executed as to the sale of the "timber" rights; (3) as to the conveyance of the timber rights, appellee told appellant that his acceptance of the payment for those rights was proper under the brokerage agreement; and (4) by giving appellant this legal advice, appellee had violated his duty to appellant as a client and had engaged in other misconduct.
 {¶ 7} Once appellee had filed his answer to the counterclaims, both parties engaged in considerable discovery. On April 3, 2000, appellant's deposition was taken at the office of appellee's counsel. After appellant had been asked a number of questions during the deposition, counsel for both parties agreed to attempt to negotiate a settlement of the entire case off the record. Appellant himself also participated in the negotiations. At the close of the discussions, the parties were able to reach a basic settlement under which, inter alia, appellant agreed to pay appellee the sum of $8,000.
 {¶ 8} In light of the fact that the parties believed they had settled the entire case, counsel for appellant contacted the trial court and indicated that the matter would not be going forward. Accordingly, the trial court issued a judgment in which the case was dismissed with prejudice. However, before the parties could fulfill their mutual obligations under the settlement agreement, a dispute arose concerning the terms of the settlement. The dispute started when appellant's counsel sent a proposed mutual release of claims to appellee's counsel. This proposed release had a confidentiality provision under which appellee could not have appellant's deposition transcribed and filed as a public record. Appellee refused to sign the proposed mutual release, asserting that the parties had not agreed to such a term. As a result, appellant refused to pay the $8,000.
 {¶ 9} In August 2000, appellee moved the trial court to enforce the settlement agreement on the basis that appellant was attempting to add new terms to which both parties had not agreed. In his written response to the motion, appellant asserted that he no longer was obligated to pay the funds because: (1) appellee had violated the oral agreement by having appellant's deposition transcribed and filed after the case had been dismissed by the trial court; and (2) appellee had violated the oral agreement by not finalizing the settlement within fourteen days after April 3, 2000.
 {¶ 10} An evidentiary hearing on the motion to enforce was held in October 2000. Based upon the evidence presented in that proceeding, the trial court rendered a judgment in which it concluded that appellee had not violated the terms of the settlement and that the oral agreement the parties had reached in April 2000 was enforceable. Specifically, the trial court found that the parties' agreement had not contained a confidentiality term, and that appellee had tried to add the term after the agreement had been reached. In light of these findings, the court ultimately held that appellant was obligated to pay the funds under the settlement once appellee had executed a "general release" as to the claims between the parties.
 {¶ 11} Following the issuance of the foregoing judgment, appellant's new counsel sent a proposed release to appellee's attorney. Unlike the first proposed release, this release did not provide for relinquishment by both parties of all possible claims arising from the underlying transactions. Instead, the new release provided only that appellee intended to relinquish all possible claims he could assert against appellant concerning the timber deal. When appellee objected to the lack of mutuality under the new release, appellant argued that he was only obligated under the settlement agreement to relinquish the four counterclaims he had raised in the action, not all possible claims he might have against appellee. As to this point, appellant emphasized that his counterclaims had pertained only to the legal advice appellee had given him, and that he had not intended to release any claim he might have as to the brokerage contract.
 {¶ 12} When appellee continued to refuse to execute the new proposed release, appellant moved the trial court to enforce its prior judgment as to the settlement. As the basis for his motion, appellant noted that the prior judgment had referred only to the execution of a "general" release by appellee, not a mutual release executed by both parties. In light of this specific language, appellant argued that he was only attempting to comply with the court's prior judgment in submitting the new release to appellee.
 {¶ 13} Approximately one month after filing the foregoing motion, appellant submitted to the trial court a supplemental memorandum on the matter. In this new submission, he contended that the testimony presented during the October 2000 hearing had supported the finding that the parties had agreed that appellee would execute a general release for the $8,000. In support of this contention, he attached to the memorandum a transcript of the October 2002 hearing.
 {¶ 14} After conducting a new hearing on appellant's motion, the trial court issued a new judgment on the "release" issue in March 2001. Upon reviewing the entire record in the case, the trial court found that the parties had originally intended for the release of all claims to be mutual. The court based this finding primarily on evidence indicating that the first release sent by appellee's counsel had been mutual. In light of this finding, the trial court held that the parties' settlement agreement would be fulfilled if the proposed mutual release was executed.
 {¶ 15} In now appealing the March 2001 judgment, appellant has assigned the following as error:
 {¶ 16} The Trial Court erred in finding that a settlement was reached between the parties which required the execution of a general mutual release of all claims which would extinguish any and all claims between the parties, including, but not limited to, claims asserted in this lawsuit.
 {¶ 17} "The trial court abused its discretion in failing to enforce its judgment entry which required the execution of a general release and substituting a judgment entry that called for a mutual release without an evidentiary hearing to determine whether a meeting of the minds was reached between the parties on that issue."
 {¶ 18} Under the second of the foregoing two assignments, appellant has raised an issue concerning the propriety of the procedure the trial court followed prior to rendering the March 2001 judgment. If the trial court did indeed commit a procedural error, it would negate the need to address the actual merits of the court's judgment. Therefore, we will consider appellant's second assignment first.
 {¶ 19} Under that assignment, appellant contends that the trial court committed prejudicial error by not affording him the opportunity to present evidence on the release question before the court rendered its decision on the matter. Specifically, appellant argues that once he had raised the question of whether the parties had had a meeting of the minds on the release question, the trial court was obligated to hold an evidentiary hearing on the point.
 {¶ 20} As appellant aptly notes, the Supreme Court of Ohio has expressly held that when a dispute exists between the parties concerning the meaning of a term in a settlement agreement, a trial court cannot resolve the dispute without first conducting a hearing on the matter.Rulli v. Fan. Co. (1997), 79 Ohio St.3d 374, syllabus. However, in applying the Rulli holding, the appellate courts of this state have held that the right to a hearing will be deemed waived under the appropriate circumstances.
 {¶ 21} For example, in Powers v. Magitech Corp. (Mar. 22, 2002), 11th Dist. No. 2001-L-015, 2002 Ohio App. LEXIS 1333, an oral hearing was held in which the trial court gave both parties the opportunity to present arguments concerning the alleged settlement. In the Powers proceeding, the appellant never asked the trial court to hear evidence and did not object to the court's procedure. Based upon this, the appellate court in Powers concluded that the appellant had waived his right to present evidence and, accordingly, could not raise the issue on appeal as a basis for reversing the trial court's judgment. See, also, ClassicImports, Inc. v. Arya (Apr. 11, 2001), 9th Dist. No. 00CA0049, 2001 Ohio App. LEXIS 1653.
 {¶ 22} In the instant case, our review of appellant's motion to enforce the prior judgment shows that he never requested to be given the opportunity to present new evidence on the release issue. The same can also be said for his supplemental memorandum on the matter. In fact, as was noted above, appellant argued in the memorandum that the evidence presented at the October 2000 hearing supported the finding that the parties had intended only for a general release to be executed by appellee. Therefore, since appellant did not request the opportunity to produce new or additional evidence on what was intended by the parties regarding the release to be executed as a result of their settlement efforts of April 2000, the trial court's reexamination of the record in this case, including the transcript of the October 2000 hearing, was not inappropriate as the basis on which to predicate its finding that the release at issue was to be a mutual one.
 {¶ 23} The trial record before us further shows that, in March 2001, an oral hearing was held on the motion to enforce the prior judgment. However, although a transcript of the October 2000 hearing has been included in the record for our review, a transcript of this second hearing has not. Under such circumstances, this court must assume that the trial court followed the correct procedure in that hearing; i.e., the trial court did not hear new evidence on the release issue because appellant did not make any request to present such evidence.
 {¶ 24} In light of the state of the record before us, we hold that appellant waived his right to present additional evidence concerning the nature of the release to which the parties had agreed. Thus, since appellant cannot properly raise this issue on appeal as a basis for reversing the trial court's March 2001 judgment, his second assignment of error has no merit.
 {¶ 25} Because appellant has failed to demonstrate a procedural error on the part of the trial court, the merits of his first assignment can now be reviewed. In essence, appellant maintains under his first assignment that the trial court's judgment as to the nature of the release in the parties' negotiated settlement was not supported by the weight of the evidence presented during the October 2000 hearing. That is, he contends that the trial court should have found that the parties had agreed that the general release of claims would be executed only by appellee.
 {¶ 26} Under basic Ohio case law, a settlement agreement is viewed as a particularized form of a contract. Black v. MIC Gen. Ins. Corp.
(Dec. 19, 1997), 11th Dist. No. 97-T-0029, 1997 Ohio App. LEXIS 5736. Hence, to be valid and enforceable, a settlement agreement must satisfy all elementary requirements for a contract, including a meeting of the parties' minds as to the main terms. Noroski v. Fallet (1982),2 Ohio St.3d 77, 79. Although the Supreme Court of Ohio has indicated that a written settlement agreement is preferable, an oral agreement is still enforceable when its terms can be determined with sufficient particularity. Kostelnik v. Helper, 96 Ohio St.3d 1, 2002-Ohio-2985, at ¶ 15. Furthermore, if the basic requirements for a contract have been met, one party may not unilaterally repudiate an oral settlement simply to avoid his obligations. Barstow v. O.U. Real Estate, III, Inc., 4th Dist, No. 01CA49, 2002-Ohio-4989, at ¶ 38.
 {¶ 27} If a dispute arises as to the terms of an oral settlement agreement, a trial court can consider the words, deeds, acts, and silence of the parties. Kostelnik, 2002-Ohio-2985, at ¶ 15. In turn, because the determination of a term is a question of fact, an appellate court will not reverse the trial court's decision when it is supported by some competent, credible evidence. Powers, 2002 Ohio App. LEXIS 1333, at *5.
 {¶ 28} Applying the foregoing standards to the release issue in the instant case, this court would begin our discussion by again noting that, in its first judgment on the settlement agreement, the trial court did state that only appellee had to sign a general release of all claims. Based on this language in the first judgment, appellant subsequently asserted in his motion to enforce that, by submitting a unilateral release of claims to appellee, he was simply complying with the trial court's prior order. Furthermore, before this court, appellant now contends that the trial court abused its discretion by essentially altering its prior "finding" as to the nature of the release in its March 2001 judgment.
 {¶ 29} As to this specific point, we would indicate that the issue of whether the parties had intended to execute a mutual release of claims was not before the trial court during the hearing on appellee's motion to enforce the settlement agreement. Therefore, even though the trial court made a reference to a "general release by appellee" in its first judgment, it did not make an actual finding on the nature of the intended release at that time because the issue of mutuality was not raised then. Rather, the trial court was merely attempting to provide a summary of the basic terms of the parties' agreement. Under these circumstances, the trial court was not bound by its prior statement in the first judgment and could make a proper finding on the matter.
 {¶ 30} In challenging the propriety of the trial court's finding in the March 2001 judgment, appellant submits that the only evidence ever presented concerning the intended nature of the release supported the finding that only appellee had to relinquish all claims under the settlement. Specifically, he submits that, during the October 2000 hearing, he had been the only witness to testify on the point, and that he had indicated that the release of all claims would only apply to appellee.
 {¶ 31} After reviewing the transcript of the October 2000 hearing, we hold that appellant's characterization of the evidence is simply incorrect. The transcript shows that the trial court also heard the testimony of the attorney who had represented appellant at the April 2000 deposition. As part of his testimony, this attorney indicated that it had been his belief that the settlement had included the term that both parties would relinquish all claims pertaining to the entire transaction. Thus, at best, the trial court heard conflicting testimony on this point.
 {¶ 32} More importantly, this court would emphasize that, during the October 2000 hearing, the trial court was presented with evidence establishing that it had been appellant's own first attorney who had written the proposed mutual release. Obviously, this fact would support the inference that the parties had actually agreed to such a release, especially since that proposed release was written immediately after the negotiations in April 2000.
 {¶ 33} In relation to the foregoing, appellant argues that the fact that his first attorney had written the proposed mutual release should not be given any weight because he never personally approved that release. However, even if appellant did not see the proposed mutual release when it was first sent to appellee, the entire record before us shows that, as of the date of the October 2000 hearing, appellant was aware of the general terms of that release. Despite this, appellant and his new counsel never raised an objection to the mutuality language during that hearing. In fact, new counsel specifically stated in her closing argument at that hearing that the intended release of all claims would be mutual. From this, it can readily be inferred that, by raising the mutuality issue in his subsequent motion to enforce, appellant was simply attempting to repudiate a term to which he had already agreed.
 {¶ 34} Taken as a whole, the trial record in this appeal contains some competent, credible evidence supporting the trial court's finding that the parties had originally agreed to a mutual release of all possible claims arising from the underlying transaction. In light of the foregoing, this court concludes that trial court did not err in ordering the parties to use the first proposed release as the final release under the settlement agreement. As a result, appellant's first assignment of error also is without merit.
 {¶ 35} Pursuant to the foregoing analysis, both assignments of error raised by appellant in this appeal lack merit. Accordingly, the judgment of the trial court is affirmed.
JUDITH A. CHRISTLEY, J., Eleventh Appellate District, sitting by assignment, ROBERT A. NADER, J., Eleventh Appellate District, sitting by assignment, concur.
Topic: enforcement of settlement agreement.
[1] There is no indication in the record that appellee participated in the negotiations concerning the sale of the property itself. Although appellant alleged in the underlying action that appellee gave him legal advice as to the sale of the property, there is no dispute that the brokerage agreement between appellee and appellant only covered the sale of the timber on the land.