OPINION
{¶ 1} Plaintiff-appellant, Thornton's, Inc., appeals a decision of the Butler County Court of Common Pleas denying its motion for summary judgment and granting the summary judgment motion of defendant-appellee, B K Land Associates, Ltd., in a disagreement over a real estate lease. For the reasons outlined below, we affirm the decision of the trial court. *Page 2 
 {¶ 2} The undisputed facts of the case are as follows. On December 20, 2004, the parties entered into a lease agreement ("the lease") concerning three parcels of real property located at 7301 Tylersville Road, West Chester, Ohio ("the Premises"). Appellee was the owner/lessor of the Premises and appellant the lessee. The lease provided for a "Preliminary Term" that commenced upon the lease's execution date. The purpose of the Preliminary Term was to permit appellant to confirm conditions precedent and to acquire the necessary government approvals to conduct its business. During this term, appellant had the right to effectuate the "Permanent Term" of the lease by presenting written notice to appellee. Upon delivery of this notice, appellee had ten days to transfer exclusive possession of the Premises to appellant.
 {¶ 3} Appellant exercised its right to effectuate the Permanent Term of the lease by delivering written notice to appellee on September 23, 2005. The Permanent Term became effective 90 days later, on December 23, 2005. In February 2006, appellant received the tax bills for the Premises for the first half of calendar year 2005. In August 2006, appellant received the tax bills for the Premises for the second half of calendar year 2005. Appellant disputed its obligation to pay the tax bills for the first half of 2005, and insisted it owed only a pro rata share of the tax bills for the second half of 2005 (collectively, "the 2005 tax bills"). Nonetheless, appellant remitted payment for the 2005 tax bills to avoid default under the lease.
 {¶ 4} Appellee refused to reimburse appellant for the 2005 tax bills. Thereafter, appellant filed suit in May 2006. The complaint sought a declaration that the terms of the lease did not require appellant to pay the tax bills for the first half of 2005, and that the tax bills for the second half of 2005 be prorated to the beginning of the Permanent Term. The parties filed cross motions for summary judgment. In a decision issued on February 16, 2007, the trial court granted appellee's motion and denied appellant's motion. Appellant *Page 3 
timely appeals, raising one assignment of error.
 {¶ 5} We review a trial court's decision on summary judgment de novo.Burgess v. Tackas (1998), 125 Ohio App.3d 294, 296. Summary judgment is proper where (1) there are no genuine issues of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can only come to a conclusion adverse to the nonmoving party, construing the evidence most strongly in that party's favor. Civ.R. 56(C). See, also, Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. The moving party bears the initial burden of informing the court of the basis for the motion, and demonstrating the absence of a genuine issue of material fact. Dresher v. Burt,75 Ohio St.3d 280, 293, 1996-Ohio-107. If the moving party meets its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing a genuine issue for trial. Id. We are mindful of these burdens in reviewing appellant's single assignment of error.
 {¶ 6} Assignment of Error No. 1:
 {¶ 7} "THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT IN OVERRULING PLAINTIFF-APPELLANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT-APPELLEE."
 {¶ 8} Appellant argues that the trial court improperly awarded summary judgment to appellee and overruled appellant's motion because the lease did not obligate appellant to pay taxes levied for a tax year prior to the commencement of the Permanent Term of the lease. Appellee insists that the lease clearly imposed just such an obligation upon appellant.
 {¶ 9} The construction of a written contract is a matter of law for the court. Saunders v. Mortensen, 101 Ohio St.3d 86, 2004-Ohio-24, ¶ 9. The intent of the parties is paramount in guiding judicial construction of contracts, and is presumed to lie within the language used in the written contract. Id. The contract must be read as a whole in ascertaining the intent of *Page 4 
the parties. Id. at ¶ 16. Where a contract is clear and unambiguous, a court need not interpret the language and must enforce the agreement by attributing the plain and ordinary meaning to the language as written. Id. at ¶ 9.
 {¶ 10} Neither party asserts that the lease is ambiguous. Therefore, there is no need for this court to decipher the parties' intent as a question of fact. Lewis v. Mathes, 161 Ohio App.3d 1, 2005-Ohio-1975, ¶ 19. We are then left to determine the parties' intent behind the contract as a matter of law, based upon the language of the lease. Id.
 {¶ 11} After reviewing the terms of the lease we conclude that, as a matter of law, appellant was obligated to pay the 2005 tax bills. Both parties heavily rely upon Section 3.5 of the lease to support their respective arguments. This section, entitled "Other Payments," provides the following:
 {¶ 12} "During the Permanent Term, Lessee shall further pay and discharge all costs and expenses for property taxes, maintenance, insurance, utilities, and other costs attributable to possession and operation of the Premises or arising directly or indirectly in connection with the Premises, this Lease, or otherwise. Any such costs and expenses that may be applicable to a period subsequent to the end of the Permanent Term shall be prorated so that Lessee shall pay only the portions thereof corresponding to the portions of such period within the Permanent Term.[1] Should Lessor pay any amount hereunder which is required to be paid by Lessee, Lessee upon written demand from Lessor, shall reimburse said amount to Lessor within fifteen (15) days. In addition to the foregoing, it is specifically understood and agreed that Lessee will pay and discharge, or cause to be paid and *Page 5 
discharged, punctually as and when the same shall become due and payable without penalty, all real estate taxes, personal property taxes, privilege taxes, excise taxes, business and occupation taxes, gross sales taxes, occupational license taxes, water charges, sewer charges, assessments and all other governmental impositions and charges of every kind and nature whatsoever, whether or not now customary or within the contemplation of the parties hereto and regardless of whether the same shall be extraordinary or ordinary, general or special, unforeseen or foreseen, or similar or dissimilar to any of the foregoing which, at any time during the Permanent Term of this Lease shall be or become due and payable * * *[.]"
 {¶ 13} Appellant places undue emphasis on the first phrase of Section 3.5, "During the Permanent Term," to support its contention that it was bound to pay for expenses that were newly incurred during the Permanent Term only. Appellant urges us to construe this phrase as a limitation upon its obligations under the lease. When reading the contract as a whole, however, it becomes clear that this phrase was not intended to operate as a limitation. Rather, appellant was obligated under the terms of the lease to cover all expenses that were incurred or became due during the Permanent Term.
 {¶ 14} To begin, the first sentence of Section 3.5 broadly encompasses all costs and expenses related to the Premises, specifically mentioning real estate taxes: "During the Permanent Term, Lessee shall further pay and discharge all costs and expenses for property taxes." (Emphasis added.) Furthermore, as recited above, Section 3.5 stipulates that "it is specifically understood and agreed that the Lessee will pay and discharge * * * punctually as and when the same shall become due and payable without penalty, all real estate taxes[.]" (Emphasis added.) This directly encompasses the 2005 tax bills. Although the bills cover a time period that took place prior to the commencement of the Permanent Term, they became due during the Permanent Term.
 {¶ 15} Additional support can be found in subsequent provisions of the lease. Section *Page 6 
3.5(d) specifies that the lessee shall pay those charges which are levied against the Premises, "it being the intention of the parties thatLessor shall be free from all such expenses and all such real estatetaxes * * *." Clearly, this language manifests the intent that appellee, the lessor, be released from liability for all real estate taxes which arise during the Permanent Term. This includes the 2005 tax bills.
 {¶ 16} Also relevant is the language contained in Section 4.16 of the lease. This section provides that the contract at issue is a "carefree lease," and that "Lessee agrees to bear, pay for and discharge * * * all other costs, charges and expenses of every kind and nature whatsoever * * *[.]" While not dispositive of the matter, this broad term of the contract lends further support to the conclusion that appellant was obligated to pay the 2005 tax bills. Finally, Section 4.16(a) provides that appellee was to receive the agreed-upon rentals without diminution "on account of any matter or thing whatsoever." Assessing the 2005 tax bills to appellee would result in such diminution in rents received, in contravention of this term of the lease.
 {¶ 17} In sum, the 2005 tax bills covered a time before the Permanent Term began and were due and payable after the Permanent Term began. The plain language of the lease obligates appellant to pay for all expenses imposed during the Permanent Term, regardless of when they were incurred. This includes real estate taxes. Accordingly, based upon the language of the lease read as a whole, appellant was responsible for paying the 2005 tax bills.
 {¶ 18} Contrary to appellant's assertions, while perhaps undesirable for appellant, this interpretation of the lease is not absurd. The Preliminary Term of the lease ran from the execution date of the lease on December 20, 2004, until December 23, 2005. Thus, the 2005 tax bills cover a period of time during which appellant leased the Premises under the Preliminary Term. It is not absurd for appellee to have contracted not to be liable for real *Page 7 
estate taxes during this time period, when appellant had the option to convert to the Permanent Term upon ten days notice, or for appellant to agree to this provision while it leased the Premises with that option. Even if appellant now views its obligations under the lease as a bad bargain, it is bound by the unambiguous terms of the agreement to which it agreed. Kostelnik v. Helper, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 17.
 {¶ 19} We conclude that the trial court properly granted summary judgment to appellee and properly denied appellant's summary judgment motion. Appellant's first assignment of error is overruled.
 {¶ 20} Judgment affirmed.
BRESSLER, P.J., and WALSH, J., concur.
[1] We recognize that the lease affords different treatment to costs and expenses incurred prior to the Permanent Term which become due during the Permanent Term, versus those incurred during the Permanent Term which become due subsequent to the Permanent Term. The lease language obligates the lessee to pay all costs and expenses that become due during the Permanent Term, even if incurred prior thereto. In contrast, the lease language provides that the lessee shall be responsible for paying a prorated share of costs and expenses incurred during the Permanent Term but which become due after the Permanent Term. *Page 1