[Cite as *Allstate Property & Cas. Ins. Co. v. Am. Family Ins. Co.*, 2015-Ohio-3978.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Allstate Property & Casualty<br>Insurance Company, | : | |
| | : | |
| Plaintiff-Appellant, | | No. 14AP-955 |
| | : | (C.P.C. No. 13CV-13556) |
| v. | | |
| | : | (REGULAR CALENDAR) |
| American Family Insurance Company, | | |
| | : | |
| Defendant-Appellee. | | |
| | : | |

D E C I S I O N

Rendered on September 29, 2015

*Hollern & Associates*, and *Edwin J. Hollern*, for appellant.

*Todd J. McKenna*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Allstate Property & Casualty Insurance Company ("Allstate"), appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, American Family Insurance Company ("American Family"), on Allstate's claims for breach of contract and unjust enrichment. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} This insurance dispute arises from an automobile collision involving Brenda Shope and Patricia A. Rowland, which occurred on April 13, 2009. Rowland was cited for the accident. As pertinent here, Allstate insured Shope with underinsured motorist limits

of $100,000 per person, and American Family insured Rowland with liability limits of $25,000 per person. Because Shope's damages exceeded Rowland's $25,000 liability limits with American Family, Shope submitted an underinsured motorist claim with her own carrier, Allstate. Allstate and Shope were initially unable to settle the underinsured motorist claim. As a result, Shope initiated an action against Allstate in the Franklin County Court of Common Pleas on April 5, 2011. The matter was docketed as Franklin C.P. No. 11CV-4321. In the original complaint, Shope named only Allstate as a party defendant, even though she alleged negligence by Rowland. On May 6, 2011, Shope filed an amended complaint adding Rowland as a party defendant. On May 13, 2011, Shope filed a second amended complaint, adding the allegation that Rowland was absent from the state of Ohio or otherwise concealed herself for a period in excess of 30 days. On May 17, 2011, Allstate filed a cross-claim against Rowland.

{¶ 3} Prior to Shope initiating the lawsuit against Allstate, American Family offered $25,000 to Shope, contingent on a full and final release of Rowland. In response, counsel for Shope sent a letter, dated October 7, 2010, to American Family stating that his client accepted American Family's offer of $25,000, but that he had requested "Allstate to conduct the assets check to determine whether they will allow [him] to execute the release and waive their med pay subrogation which should be in the area of $10,000.00." American Family sent a letter, dated October 13, 2010, to counsel for Shope confirming in writing its offer of $25,000 in exchange for a full and final release of all claims. By letter dated December 2, 2010, Shope's counsel informed American Family that Allstate had "chosen to advance the $25,000.00 and retain [its] subrogated rights." Shope's counsel included with the December 2010 letter a copy of the Allstate "Trust Agreement for Pre-Payment of Tortfeasor's Bodily Injury Liability Limit/Offer Under Underinsured Motorists Coverage." That agreement, between Allstate and Shope, indicates that Allstate provided $25,000 to Shope as "pre-payment of the bodily injury liability limits available" to Shope under the American Family policy insuring Rowland.

{¶ 4} During the pendency of Franklin C.P. No. 11CV-4321, Allstate settled the underinsured motorist claim with Shope. Allstate then demanded that American Family pay Allstate the $25,000 that Allstate advanced to Shope. American Family refused to pay Allstate the $25,000. As a result, in December 2013, Allstate filed suit against

American Family alleging breach of contract and, in the alternative, unjust enrichment. In September 2014, both Allstate and American Family moved for summary judgment. On October 23, 2014, the trial court issued its decision granting American Family's motion for summary judgment and denying Allstate's motion for summary judgment. The trial court concluded that Allstate's breach of contract claim failed because there was no contract between American Family and Allstate, and that Allstate's alternative claim of unjust enrichment failed because Allstate knowingly accepted the risk of not being reimbursed when it advanced the $25,000 to Shope. Accordingly, the trial court awarded judgment to American Family.

{¶ 5} Allstate timely appeals.

## II. Assignment of Error

{¶ 6} Allstate assigns the following error for our review:

> The trial court erred by granting defendant/appellee's motion for summary judgment and overruling the motion for summary judgment filed by plaintiff/appellant.

## III. Standard of Review

{¶ 7} An appellate court reviews summary judgment under a de novo standard. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29. Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 8} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the

nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

## IV. Discussion

{¶ 9} In its sole assignment of error, Allstate asserts the trial court erred in granting American Family's motion for summary judgment and denying Allstate's motion for summary judgment. Allstate argues the trial court erroneously concluded that a contract for payment of the $25,000 by American Family did not exist between American Family and Allstate, and that the doctrine of unjust enrichment does not apply. For the reasons that follow, we find Allstate's arguments to be unpersuasive.

### A. Breach of Contract Claim

{¶ 10} We first address Allstate's breach of contract claim. Generally, a contract is defined as a promise, or a set of promises, actionable upon breach. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained-for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration. *Id.* A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract. *Id.* In order to establish a claim for breach of contract, the following elements must be demonstrated: the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. *State of Ohio Dept. of Dev. v. Matrix Centennial, L.L.C.*, 10th Dist. No. 14AP-47, 2014-Ohio-3251, ¶ 16.

{¶ 11} Allstate argues American Family was contractually obligated to pay Allstate the $25,000 that Allstate advanced to Shope. Allstate argues that it accepted American Family's offer on behalf of Shope when it advanced the $25,000 and Shope signed the Trust Agreement. Allstate essentially reasons that "when a liability insurer makes an offer to an injured party to resolve the claim, and the underinsured carrier steps in and substitutes its limits, the insurers have made an agreement that the liability carrier (whose limits have been substituted) will at some later time repay the insurer who made the substitution." (Allstate's Merit Brief, 9-10.) According to Allstate, this court's decision

in *Great Am. Ins. Co. v. Colonial Ins. Co. of California*, 10th Dist. No. 95APE04-495 (Nov. 28, 1995), requires a finding that a contract between Allstate and American Family existed.

{¶ 12} Allstate's reliance on *Great American* is misplaced. Although *Great American* also involved the issue of whether the underinsured motorist carrier accepted an offer of the liability insurer relating to the tendering of the tortfeasor's policy limit, that case is not controlling because the facts are distinguishable. In *Great American*, Colonial Insurance Company of California ("Colonial") insured the tortfeasor in an automobile accident with a policy limit of $12,500. Great American Insurance Company ("Great American") insured the injured plaintiff under an underinsurance policy with a limit of $300,000. Colonial offered to settle the plaintiff's claim arising out of the accident for the limit of the tortfeasor's policy with Colonial, $12,500. Great American initially indicated it intended to substitute Colonial's policy limit to the plaintiff, but had not made a decision whether to waive its subrogation rights against the tortfeasor. Representatives of Great American and Colonial corresponded regularly regarding Colonial's offer to pay its policy limit of $12,500, and Great American continued to indicate it had not yet made a final decision regarding the waiver of its subrogation rights. However, after the expiration of the statute of limitations for bringing an action against the tortfeasor, Great American indicated it would waive its subrogation rights against the tortfeasor and requested that Colonial issue the check for $12,500. When Colonial refused to issue the check, Great American sued for breach of contract. *Id.*

{¶ 13} The trial court ruled in favor of Great American on its breach of contract claim. On appeal, this court affirmed, determining in part that a contract did exist: "Colonial promised to pay Great American $12,500 in exchange for Great American's promise to forbear bringing an action against [the tortfeasor] based upon its subrogation rights." *Id.* This court reasoned that the expiration of the statute of limitations did not terminate or otherwise limit the offer made by Colonial because Colonial did not communicate the offer would no longer be valid upon the expiration of the statute of limitations. This court further reasoned that Great American's agreement not to bring an action constituted sufficient consideration to support a contract, even though Great

American's acceptance of the offer occurred after the expiration of the statute of limitations. *Id.*

{¶ 14} Allstate argues that, as in *Great American*, there is no evidence that American Family conditioned its offer to pay the $25,000 on suit being filed against Rowland before the expiration of the applicable statute of limitations. This argument misses the mark. In *Great American*, the underinsured motorist carrier took under advisement the tortfeasor's carrier's offer to pay the policy limit, in exchange for a release, and then the underinsured motorist carrier ultimately accepted the offer. Because the acceptance occurred after the expiration of the statute of limitations, the primary issue was whether the offer remained open after that expiration. Here, American Family offered its policy limits to Shope in exchange for a full and final release of Rowland. In response to American Family's inquiry into the status of whether Shope was accepting its offer, Shope's counsel sent a letter to American Family stating that Allstate had chosen to advance the $25,000 and retain its subrogation rights, making particular reference to the Trust Agreement between Shope and Allstate. Pursuant to the Trust Agreement, Shope agreed to take any necessary and appropriate legal action to recover against the tortfeasor, and to hold any monies recovered up to the advanced $25,000 in trust for Allstate, to be immediately paid to Allstate. The Trust Agreement demonstrates Allstate and Shope contemplated recovery of the advanced $25,000 through legal action against the tortfeasor. Thus, the correspondence from Shope's counsel to American Family clearly demonstrated Allstate did not agree to the release of Rowland. Thus, resolution of this case is not controlled by *Great American*.

{¶ 15} Here, Allstate essentially contends that American Family should be bound by its offer to pay $25,000, despite there being no acceptance of the offer. Allstate concedes neither it nor the tortfeasor can, directly or indirectly, recover the $25,000 from the tortfeasor based on the claims against Rowland in Franklin C.P. No. 11CV-4321 because, according to Allstate, the claims against Rowland in that case were not timely filed. Allstate is attempting to circumvent this apparent deficiency by alleging American Family is bound by its conditional offer. But, as set forth above, the fundamental flaw in this argument is that American Family's offer was not accepted. Instead of agreeing to a release of the tortfeasor, Allstate advanced the $25,000 and preserved its subrogation

rights against Rowland. Because there was no offer and acceptance between Allstate and American Family, there was no contract.

{¶ 16} For these reasons, the trial court did not err in finding that Allstate's breach of contract claim failed as a matter of law because no contract existed between Allstate and American Family.

### B. Unjust Enrichment Claim

{¶ 17} We now turn to Allstate's unjust enrichment claim. The doctrine of unjust enrichment applies when a benefit is conferred and it would be inequitable to permit the benefitting party to retain the benefit without compensating the conferring party. *Meyer v. Chieffo*, 10th Dist. No. 10AP-683, 2011-Ohio-1670, ¶ 16. Three elements comprise an unjust enrichment claim: (1) the plaintiff conferred a benefit on the defendant, (2) the defendant knew of the benefit, and (3) it would be unjust to permit the defendant to retain the benefit without payment. *Meyer* at ¶ 37. This court has previously opined that " '[o]ne factor in deciding whether there has been unjust enrichment is the party's expectation when the loss was incurred.' " *Johnson v. Lindquist*, 10th Dist. No. 12AP-140, 2012-Ohio-5474, ¶ 10, quoting *Concrete Designers, Inc. v. Demmler*, 10th Dist. No. 95APE06-722 (Dec. 28, 1995); *see Paugh & Farmer, Inc. v. Menorah Home for Jewish Aged*, 15 Ohio St.3d 44, 46 (1984) (finding party's "no expectation of payment" to be significant in unjust enrichment analysis). "Thus, where a 'loss' resulted from a risk the plaintiff knowingly undertook, and there was no evidence from which to infer that the plaintiff had an expectation that the defendant would reimburse him for amounts incurred, we have found it was not inequitable for plaintiff to bear the loss." *Johnson* at ¶ 10, citing *Concrete Designers, Inc.*

{¶ 18} Allstate argues it has demonstrated the elements of its unjust enrichment claim. Allstate asserts it conferred a benefit on American Family by advancing $25,000 to Shope because American Family insured Rowland, the alleged tortfeasor, up to that amount. Allstate also asserts American Family knew of this benefit and that it would be manifestly unjust for American Family not to reimburse Allstate for the amount advanced.

{¶ 19} Like the trial court, we find that Allstate's unjust enrichment claim fails as a matter of law. As discussed above, American Family offered to pay Allstate's insured,

Shope, $25,000 in exchange for a full and final release of all claims.  Allstate did not agree to the release.  As to the advanced $25,000, Allstate bore the risk that Rowland would not be timely sued and that Allstate ultimately would not be reimbursed for the advanced funds through litigation against the alleged tortfeasor.  As reflected in the Trust Agreement between Allstate and Shope, in exchange for Allstate advancing the $25,000 to Shope, Shope agreed to take any necessary and appropriate legal action to recover against the tortfeasor, and to hold any monies recovered up to the $25,000 in trust for Allstate, to be immediately paid to Allstate.  That American Family's insured, Rowland, was not, according to Allstate, timely sued does not confer an unfair benefit upon American Family.  Thus, under these circumstances, application of the doctrine of unjust enrichment is not warranted.

{¶ 20} For these reasons, the trial court did not err in overruling Allstate's motion for summary judgment and granting American Family's motion for summary judgment. Accordingly, we overrule Allstate's sole assignment of error.

## V. Conclusion

{¶ 21} Having overruled Allstate's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, P.J., and SADLER, J., concur.

_____