OPINION
{¶ 1} Larry Phillips is appealing the judgment of the Montgomery County Common Pleas Court, which determined that he had entered into a lease with option to purchase agreement with James Lowe, permitting Lowe to purchase Phillips's property at an agreed upon price.
 {¶ 2} Larry Phillips owns real property on Westfall Drive in Dayton, Ohio. Phillips had lived at the property from 1981 until 1987. In 1987, Phillips began renting the property. In 1991, Phillips rented the property to James Lowe. In August of 1991, Lowe had moved to Ohio from Kentucky upon separating from his wife. Since he quickly needed a residence to enroll his children in school, Lowe began renting the Westfall property in September of 1991. Lowe lived at the property until 1994. The property remained vacant from 1994 to 1996. In 1996, Lowe's niece began living at the property with payments continuing to be made to Phillips.
 {¶ 3} When Lowe originally took possession of the property, he gave $2000 to Phillips. Lowe testified that this money was for the first four months rent on the property at $500 each month. In contrast, Phillips testified that this $2000 was for the rent of $875 a month for a few days in August plus the months of September and October.
 {¶ 4} After Lowe moved into the property, Phillips ceased making any repairs to the property. Phillips testified that he never made any further repairs to the property because the property never needed repairs and that Lowe had told him that he would do any needed repairs. However, Lowe presented evidence that the property was in need of significant repair and that he made those repairs at his own expense. Lowe testified that in his first year at the property he worked approximately 40 hours a week on the house, making repairs. In the second and third years, he testified that he worked twenty five hours a week on the house. In addition to his time, Lowe testified that he spent over $15,000 on repairs to the property. At the hearing, Lowe presented some of the receipts for the money he spent on repairs to the property. Additionally, Lowe's babysitter testified that Lowe made several improvements to the property and spent a great deal of time on those improvements. Further, the babysitter testified that she once commented to Phillips about all of the repairs Lowe was making to the property and that Phillips responded Lowe could do what he wanted with the property because it was "his [Lowe's] place."
 {¶ 5} Phillips and Lowe never entered into a written agreement regarding the property either in the form of a lease agreement or an agreement contemplating the purchase of the property. Although Phillips testified that he usually operates with written agreements, no agreement of any type was entered into by these parties. When asked why he had not insisted on a written agreement, Lowe testified that he did not think he needed a written agreement as he knew and trusted Phillips.
 {¶ 6} Over the course of the three years that Lowe lived at the property, the parties had several discussions about Lowe purchasing the Westfall property. Lowe testified that during the first discussion Phillips and he discussed a purchase of the property for $90,000 under a land sale contract. However, Phillips's mortgage included a due on sale clause and neither Phillips nor Lowe could pay off the balance on the mortgage nor could Lowe get a traditional mortgage. Therefore, the parties were unable to pursue the land sale contract option.
 {¶ 7} Phillips testified that Lowe had approached him about buying the property, but that Phillips did not want to sell. According to Phillips, he discussed a purchase price with Lowe of $150,000. When Lowe refused to pay so high an amount for the property, Phillips was purportedly no longer interested in selling the property.
 {¶ 8} Lowe testified that after the land sale proposal fell through Phillips discussed the possibility of a lease purchase agreement. Lowe testified that Phillips explained the terms of a lease with option to purchase to Lowe. Phillips asked his attorney to prepare a lease agreement with option to purchase. Phillips testified that when he had his attorney draft the contract, his intention was to sell the property.
 {¶ 9} Lowe testified that in addition to the lease agreement Phillips gave him an amortization schedule that was admitted into evidence at the hearing. Pursuant to the schedule, Lowe's payments's increased to $875 a month with $702.86 of the payment going toward the purchase price of the property. Lowe's babysitter at the time corroborated Lowe's testimony that Phillips had brought the amortization schedule over with the lease agreement. The babysitter testified that on the day Phillips brought the documents over she was home but Lowe was not and that Phillips pointed the documents out to her, told her what they were, and left them with her. Additionally, the babysitter's husband testified that he was there that day and remembers Phillips bringing over documents, although he did not look closely at the documents. Phillips asserted neither he nor his attorney made an amortization schedule. Although he had the lease agreement prepared and gave it to Lowe, Phillips and his ex-wife testified that when he gave the lease agreement to Lowe personally that no one else was present. Phillips's attorney testified that he did not have any recollection of drafting the lease agreement or the amortization schedule, but that it would not have been unusual for him to have drafted such documents.
 {¶ 10} In 1992, Lowe approached Phillips and told him that he wanted to exercise his option on the lease agreement and purchase the property. At the time, Phillips was in the process of divorcing his wife and did not want to sell the property until the divorce proceedings were completed. At approximately the same time, the roof on Phillips's residence needed to be repaired. Lowe assisted Phillips in the repair of the roof, although the parties disagree as to the extent of the assistance. Lowe testified that he bought all of the materials and hired four men to help him repair the roof. Phillips and his sons and ex-wife testified that Lowe only gave advice on how to make the repairs but did not actually help in the labor and physical repair of the roof. Moreover, Phillips testified that he paid for the materials needed to make the roof repairs. Lowe was not compensated for his assistance but testified that he did the repair with the understanding that his work was in consideration for the continued right to purchase the Westfall property. Phillips stated that Lowe's assistance on the roof repair was unrelated to the Westfall property.
 {¶ 11} In 1993 or 1994, Lowe again approached Phillips about exercising his right to purchase the Westfall property. However, at this time Phillips was in the process of filing for bankruptcy. Because of the bankruptcy proceedings, Phillips told Lowe that he could not sell the property at the time but not to worry about the property. In approximately 1996, Lowe went to Phillips to attempt to purchase the property for the last time; Phillips told Lowe that he did not intend to sell the property to him.
 {¶ 12} On September 18, 1998, Lowe filed this action, seeking a declaratory judgment that the lease agreement is valid and binding and that Lowe could exercise his option to purchase. Initially, the court granted Lowe a default judgment in December of 1998. However, on July 27, 2001, the court granted Phillips's motion for relief from judgment in which he stated that he had never received notice of Lowe's complaint. The case was then referred to a magistrate. Subsequently, Lowe amended his complaint to add claims for equitable and promissory estoppel and fraudulent inducement and for alternative claims in the event that the declaratory judgment claim was unsuccessful.
 {¶ 13} The magistrate held a hearing on the complaint on January 9th and 10th of 2003. At the end of the hearing, the magistrate issued a judgment in favor of Lowe. The magistrate also dismissed Lowe's claims for fraud and punitive damages as well as Lowe's alternative claims. Phillips filed objections to the magistrate's decision . These objections were overruled on May 26, 2004 and the magistrate's decision was adopted. This appeal was filed from the trial judge's decision. However, in a previous decision and entry, we concluded the trial court's decision was not a final appealable order because the court failed to enter a judgment entry stating the relief to be granted. We remanded for the trial court to enter such a judgment. It has done so and we now will address the merits of this appeal.
 {¶ 14} Phillips raises the following assignments of error:
 {¶ 15} "[1.] The trial court erred to the prejudice of appellant in overruling appellant's objections to the magistrate's decision.
 {¶ 16} "[2.] The trial court's ruling is contrary to the manifest weight of the evidence."
Appellant's first assignment of error:
 {¶ 17} Phillips argues that the trial court erred in overruling his objections to the magistrate's decision when Lowe's claims were barred by the Statute of Frauds, the unsigned lease on which Lowe relies failed to create a contract, and Lowe's claims were barred by the statute of limitations. We disagree.
 {¶ 18} The statute of frauds is codified in R.C. 1335.05, which provides:
 {¶ 19} "No action shall be brought whereby to charge the defendant, upon a * * * contract or sale of lands, tenements or hereditaments, or an interest in or concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."
 {¶ 20} However two exceptions exist to the statute of frauds — part performance and promissory estoppel. In order to establish part performance, a party must show: 1) evidence of a change in who possesses the land; 2) payment of all or part of the consideration for the land; and 3) improvements, alterations, or repairs on the land. Areawide HomeBuilders Inc. v. Hershberger Construction, Inc. (Feb. 4, 1998), Summit Dist. No. CA 18514. The party asserting part performance must have undertaken acts that "changed his position to his detriment and make it impossible or impractical to place the parties in status quo." BeaverparkAssociates v. Larry Stein Realty Co. (Aug. 30, 1995), Mont. App. No. 14950 quoting Delfino v. Paul Davies Chevrolet, Inc. (1965),2 Ohio St.2d 282, 287.
 {¶ 21} In this case, Lowe presented evidence that he had possession of the property, that he paid additional money to buy the property, and that he spent time, labor and money in making repairs to the property. Lowe testified that he had continuous possession of the property since the time the parties first began discussing the purchase of the property. Lowe testified that when he initially agreed to rent the property his rental payments were to be $500 a month. However, once the parties entered into the lease with option to purchase agreement, his payments increased to $875 a month. Therefore, Lowe presented evidence that he paid an additional $375 a month over the course of many years because of the oral agreement he entered into with Phillips for a lease with option to purchase the property.
 {¶ 22} Additionally, Lowe testified that he made extensive repairs and improvements to the property because he believed he was purchasing the property. Lowe testified that several walls in the rear of the house and the garage had sustained extensive water damage from a leaking roof. He testified that he removed the damaged portion of the wall and replaced the drywall and studs in these areas. Lowe also installed ceramic tile and painted and wallpapered several rooms in the house. Additionally, he stated that he removed large amounts of trash and debris from the property that had been left by a previous tenant. Further, he hired Tony's Bobcat Service to level the land. He also repaired the roof on the house. He further testified that he wired the property's separate pole barn with electricity so that it could be used at night. Moreover, he replaced the air conditioning unit on the property.
 {¶ 23} Further, Lowe testified that he worked on the property approximately forty hours a week during the first year he lived there and twenty five hours a week in the second and third years that he lived there. Although Phillips did not acknowledge that Lowe made improvements to the property, he did admit that since Lowe moved into the property in 1991 he has not done any work or repairs on the property. Phillips testified that any repairs or work done to the property since then was done by Lowe. (Tr. 12-13).
 {¶ 24} The evidence Lowe presented detailing his possession of the property, the additional monthly money he paid as part of the lease agreement, and the improvements he made to the property amounted to ample evidence of part performance by Lowe in reliance on the lease agreement between the parties.
 {¶ 25} An additional exception to the statute of frauds is the doctrine of promissory estoppel. The promissory estoppel doctrine is "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee * * * and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise."Gathagan v. Firestone Tire and Rubber Co. (1985), 23 Ohio App.3d 16,18. Additionally, in order to succeed on a promissory estoppel claim, there must be "either a misrepresentation that the statute of fraud's requirements have been complied with or a promise to make a memorandum of the agreement." Beaverpark, supra.
 {¶ 26} Both the trial court and the magistrate found ample evidence that Lowe relied upon Phillips' promise to his detriment. As we stated above, Lowe presented evidence that he made several repairs and improvements to the property, including repairing water damage, installing ceramic tile, and extensive landscaping. Furthermore, Lowe testified that he paid Phillips $875 rather than $500 each month because Phillips had promised to sell him the property pursuant to the lease agreement. Thus, Lowe presented evidence that he relied on Phillips's promise to his detriment.
 {¶ 27} Phillips testified that once Lowe stated that he would not pay $150,000 for the property that he no longer intended to sell the property to him. However, Phillips's actions and his testimony contradict this statement. Lowe presented evidence that he came to Phillips on several occasions over the course of three years and that Phillips led Lowe to believe that although he would not sell the property at that time that he would do so in the future when his personal matters were settled. Additionally, Phillips's statement that once Lowe said he would not pay $150,000 for the property he was done discussing a sale is inconsistent with his own testimony that after Lowe rejected the $150,000 asking price he went to an attorney and had the attorney draft the lease with option to purchase agreement. Clearly, he was not done entertaining the idea of a sale of the property to Lowe when Lowe rejected the $150,000 sale price as he claimed. Therefore, Phillips continued to have dealings with Lowe regarding selling the property to him. According to Lowe's testimony, Phillips' continued deferment of Lowe's request to purchase the property led Lowe to believe he would eventually be able to purchase the property under the lease agreement.
 {¶ 28} Phillips should have reasonably known that agreeing to sell the property to Lowe per the lease agreement would result in Lowe investing in the property through repairs and improvements to his detriment. Phillips knew that he made no repairs to the property since 1991. Phillips had to know that Lowe was making repairs and improvements to the property. Additionally, Lowe testified that his monthly payment to Phillips was $375 more than the rental price because his payments were going towards the purchase of the property. Phillips had to know that Lowe was paying more than the rental rate. Therefore, Phillips should have known that his promise was causing Lowe to take actions to his detriment.
 {¶ 29} As to the Beaverpark requirement that a promise to make a memorandum of the agreement in writing must occur in order to rely on the promissory estoppel exception to the Statute of Frauds, the evidence supports that such a promise occurred. The drafted lease agreement and amortization schedule amounted to a memorandum of the agreement. Plus, as we stated above, Lowe testified that Phillips led him to believe that they would complete the transaction. On more than one occasion, Lowe approached Phillips about purchasing the property and Phillips led Lowe to believe that he would sell after he resolved a personal problem. Therefore, we find that a promise to make a memorandum of the agreement occurred in this case. Thus, we agree with the trial court that Lowe established the exception of promissory estoppel.
 {¶ 30} Having reviewed the evidence in this case, we cannot say that the trial court erred in determining that Lowe had established an exception to the Statue of Frauds by proving part performance and promissory estoppel.
 {¶ 31} Phillips also argues the trial court erred in overruling his objections to the magistrate's decision when no contract was formed because material terms were missing from the agreement. Generally, a contract "is defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." Kostelnik v. Helper, 96 Ohio St.3d 1,2002-Ohio-2985, ¶ 16. However, when the contract between the parties is an oral contract, the terms may be determined from the "words, deeds, acts and silence of the parties." Rutledge v. Hoffman (1947),81 Ohio App. 85. In order to enforce a contract, the parties must have come to a meeting of the minds on the essential terms of the contract.Kostelnik, supra ¶ 17.
 {¶ 32} Phillips argues that a contract could not have been formed because he and Lowe never agreed on a purchase price or the terms of the payment. However, this is contradicted by Lowe's testimony that the parties agreed upon $90,000 for the property and that the amortization schedule showed the agreed upon payments. Although Phillips argues that the amortization schedule was not an attachment to the lease agreement, Lowe testified that it was and that Phillips provided him with both docments. Additionally, Lowe testified that he paid Phillips $875 a month over the course of their dealings. Lowe explained that this included the $702.86 payment shown on the amortization schedule and the amount Phillips told him was needed for insurance and taxes. The trial court was free to find Lowe's testimony credible and give it ample weight. Lowe presented evidence that the material terms of the contract were agreed upon. We cannot say that the trial court erred in overruling Phillips's objection asserting that no contract was formed between the parties.
 {¶ 33} Finally, Phillips maintains that the trial court erred in overruling his objections to the magistrate's decision because the statute of limitations on Lowe's claims had expired. A cause of action arising from a contract dispute accrues when a buyer realizes the seller's failure to perform as agreed in the oral contract. Aluminum LineProducts Co. v. Brad Smith Roofing Co., Inc. (1996), 109 Ohio App.3d 246,258. Phillips argues that the statute of limitations began to run in 1992 since Lowe testified that he asked Phillips to sell him the property while Phillips was in the process of a divorce. We disagree. Lowe testified that Phillips did not clearly tell him that would not sell the property to Lowe but rather merely asked Lowe to wait until the divorce was finalized. We agree with the trial court that it did not become clear that Phillips would not sell the property to Lowe until 1996 when Phillips told Lowe that he had no intention of selling the property to him pursuant to the lease agreement. We agree with the trial court that this was the point at which the statute of limitations began to run. Lowe's filing of his complaint in 1998 was well within the statute of limitations. Therefore, the trial court did not err in overruling Phillips's objections based on his statue of limitations argument.
 {¶ 34} Phillips's first assignment of error is without merit and is overruled.
Appellant's second assignment of error:
 {¶ 35} Phillips's argues that the judgment of the trial court was against the manifest weight of the evidence. We disagree.
 {¶ 36} A trial court's decision in a civil matter is not against the manifest weight of the evidence provided it is based on competent, credible evidence that goes to each element of the case. State v.Wombold (Feb. 19, 1999), Montgomery App. No. 17191, unreported, p. 3, citing Seasons Coal v. Cleveland (1984), 10 Ohio St.3d 77. In this regard, it is the duty of the trial court to judge the credibility of witnesses and determine the weight to be given their testimony. Id. An appellate court may not substitute its judgment for that of the trial court regarding the credibility of testimony. State v. Lillard (Oct. 24, 1997), Miami App. No. 97CA10, unreported.
 {¶ 37} Phillips essentially makes the same arguments as he made in the first assignment of error. Phillips asserts that Lowe did not present competent, credible evidence of promissory estoppel or part performance to result in an exception to the statute of frauds. Additionally, he argues that the evidence fails to establish that a contract was created between the parties. As we stated in the previous assignment of error. Lowe presented evidence in the form of his testimony and some receipts that he had invested money, time, and effort into the property because Phillips had told him that he could purchase the property pursuant to the lease agreement. Additionally, Lowe presented the amortization schedule that both he and his babysitter testified was provided by Phillips with the lease agreement. Having reviewed the evidence presented at the hearing, we cannot say that the trial court clearly lost its way in concluding that the doctrines of promissory estoppel and part performance apply in this case, thus taking the contract out of the statute of frauds.
 {¶ 38} As to Phillips's argument that the trial court's determination that a contract was formed between the parties was against the manifest weight of the evidence, we disagree. As we stated in the previous assignment of error, Lowe testified that the parties agreed upon a price of $90,000 for the property and that the amortization schedule showed the payments and the associated reduction in the purchase price. Further, Lowe testified that Phillips had told him that $702.86 of the $875 monthly payment went towards the purchase price and the remainder of the payment was needed for insurance and taxes on the property. After a review of the evidence presented, we find Lowe presented competent, credible evidence that a contract was reached between the parties. We cannot say that the trial court's judgment was against the manifest weight of the evidence. Phillips's second assignment of error is without merit and is overruled.
 {¶ 39} The judgment of the trial court is affirmed.
Brogan, P.J. and Wolff, J., concur.