[Cite as *Jackson v. Force*, 2014-Ohio-3167.]

IN THE COURT OF APPEALS FOR MIAMI COUNTY, OHIO

ANDREW JACKSON, et al.                         :

    Plaintiffs-Appellants                     :               C.A. CASE NO.     2014 CA 6

v.                                             :               T.C. NO.     12CV83

JUDITH L. FORCE, et al.                        :               (Civil appeal from
                                                               Common Pleas Court)
    Defendants-Appellees                      :

                                               :

. . . . . . . . . .

# **O P I N I O N**

Rendered on the _____18th_____ day of _____July_____, 2014.

. . . . . . . . . .

JOHN E. FULKER, Atty. Reg. No. 0003295, P. O. Box 8, 12 S. Cherry Street, Troy, Ohio 45373
    Attorney for Plaintiffs-Appellants

CHRISTOPHER D. CLARK, Atty. Reg. No. 0065132, 247 West Court Street, Sidney, Ohio 45365
    Attorney for Defendants-Appellees, Judith L. Force and Jack Force

MICHAEL J. VALENTINE, Atty. Reg. No. 0038806 and TYLER TARNEY, Atty. Reg. No. 0089082, 65 E. State Street, 4th Floor, Columbus, Ohio 43215
    Attorneys for Defendants-Appellees, Dick Long Real Estate, Inc. and Diane L. Long, Executor of the Estate of Curtis J. Long

. . . . . . . . . .

FROELICH, P.J.

{¶ 1}   Andrew and Donna Jackson appeal from a judgment of the Miami County Court of Common Pleas, which denied their motion for summary judgment, granted the defendants' motions for summary judgment, dismissed the Jacksons' second amended complaint, and dismissed the cross-claim as moot.   For the following reasons, the trial court's judgment will be affirmed.

## I.   Background and Procedural History

{¶ 2}   Mary Esther Yount was the long-time owner of approximately 171 acres, consisting of 112 acres in one section and 59 acres in another, located at 6683 State Route 718 in Pleasant Hill, Ohio.   Since approximately 1998, Rex Jackson had a lease with Yount to farm the property.   By 2010, Yount was no longer able to actively participate in the management of the property, and her daughter, Judith Force, managed the farm for her under a power of attorney that Yount had given to Force several years before.   On several occasions, Rex[1] expressed to Force that he was interested in purchasing the property.   In mid-June 2011, Force approached Rex and asked him if he was still interested in buying the farm and Rex responded that he was.   Force told Rex that her mother had wanted him to end up with the farm.

{¶ 3}   Rex discussed the property with his parents, Andrew and Donna Jackson. Andrew and Donna agreed to purchase the property, which Rex would farm.

{¶ 4}   On June 29, 2011, Rex and his father went to Judith Force's home to discuss purchasing the farm.   Force's husband, Jack, was present during the conversation.   Rex and Andrew Jackson presented Force a handwritten purchase agreement, with no price listed.

---

[1]We will use first names when it adds to clarity.

After some discussion, the Jacksons and Force agreed to a purchase price of $850,000. The agreement read, in its entirety:

> Mary Esther Yount & Judy Force agree to sell 170 A. at 6683 W. St.Rt. 718 to Andrew & Donna Jackson for $850,000.– Mary Esther & Judy will pay July 2011 property taxes. Andrew & Donna will pay Dec. taxes. Mary Esther & Judy will have property surveyed if need to be done. Andrew & Donna will receive fall payment for farm rent for 2011 from Rex Jackson. Andrew & Donna will take possession on closing date of sale. (transfer of deeds) Andrew & Donna gave Mary Esther Yount & Judy Force $500.– good faith money for this agreement. All parties agree to this contract.

Andrew and Donna Jackson had signed the document prior to the meeting. Force signed the document "Judith L. Force POA." Andrew Jackson gave Force a $500 check, which she deposited into her and Jack's personal savings account.

{¶ 5} Force does not dispute that she told the Jacksons that she had full authority to enter into a contract to sell the farm. However, at that time (June 29, 2011), Yount held a life estate interest in the property, and she had previously given her son, Rudy Allen Yount, and Force undivided one-half remainder interests in the property. Judith Force's undivided one-half remainder interest in the property was titled to the Jack L. Force and Judith Force Revocable Living Trust ("the Trust"). Rudy Yount had died in March 2011, and his estate (which had not yet been probated) held the one-half remainder interest on June 29, 2011.

{¶ 6} After the contract between the Jacksons and Force was signed, Force

contacted one of Rudy Yount's daughters, Abigail Sperl, and told her that the farm had been sold. Sperl, the unofficial spokesperson for Rudy's family, had no objection to the sale. Force subsequently arranged for a survey of the property so that it could be sold to a non-family member; the survey was completed in September 2011. Force told family members, a tenant on the property, and several other people that the property was being sold to the Jacksons. The Jacksons arranged for financing for the purchase. Force testified in her deposition that she felt that she had indeed sold the farm to the Jacksons.

{¶ 7} Mary Esther Yount died in August 2011, extinguishing her life estate.

{¶ 8} In the fall of 2011, Curt Long, a real estate agent, came to the farm and asked Force if the farm had sold. When Force told him that she had contracted to sell it to the Jacksons for $850,000, Long replied, "Well, I could get you much more than that." Force testified that she discussed with Long who had signed the June 29, 2011 agreement, and Long informed her that there "wasn't enough signatures" and that she could get out of the contract. (Long disputed that he discussed the validity of Force's agreement with the Jacksons.) Force orally authorized Long to try to find her a better price.

{¶ 9} In January 2012, Force informed Rex Jackson that she had received an offer from another individual to purchase the farm for $1.1 million. She told Rex that she would still sell the farm to him if he met that offer. The Jacksons did not agree to match the oral offer, because they believed they already had a valid contract to purchase the farm.

{¶ 10} On February 2, 2012, Andrew and Donna Jackson brought suit against Judith and Jack Force, individually and as co-trustees of the Jack L. Force and Judith L. Force Revocable Trust ("the Force Defendants"), raising claims of fraud and

misrepresentation and seeking specific performance.

{¶ 11} In April 2012, Force received through Curt Long a written offer to purchase the property for $1.35 million. On April 13, 2012, Force executed an Exclusive Right to Sell Contract with Dick Long Real Estate, Inc. for the property located at 6683 St. Rt 718. In paragraph 7 of this contract, Force represented, in part, that she was "the sole owner of and has exclusive control of the property" and that she "is fully authorized and able to enter into and perform this Contract." (The record suggests that Sperl, as executrix for Rudy Yount's estate, may have also signed a similar agreement. The counteroffer for the $1.35 million offer was signed by Force, Jack Force, and Abigail Sperl.) It appears that this potential sale of the farm was not completed due to this litigation.

{¶ 12} In July 2012, the Jacksons filed an amended complaint, adding Dick Long Real Estate, Inc. and Curt Long as defendants and asserting against them a claim of tortious interference with a contract. After Curt Long's death, the Jacksons again amended their complaint to substitute Diane Long, as executrix for the estate of Curt Long. The Force Defendants brought a cross-claim against the Long Defendants for contribution and indemnification.

{¶ 13} All of the parties moved for summary judgment. The Long Defendants argued that they were entitled to judgment on the tortious interference claim because there was no enforceable contract with which to interfere. They asserted that Judith Force had not withdrawn her interest from the trust, that she did not sign the handwritten agreement in an individual capacity, and that her husband did not sign the June 29, 2011 contract as a trustee. The Long Defendants further argued that they lacked actual malice. They sought

summary judgment on the cross-claims, asserting that the Force Defendants had no right to contribution or indemnification.

{¶ 14} The Force Defendants also asserted that they were entitled to judgment on the Jacksons' claims. They argued that the Jacksons' claim for fraud and misrepresentation failed, because Judith Force lacked the intent to deceive regarding her ownership interest or desire to sell the farm to the Jacksons. They also argued that the Jacksons did not reasonably rely on Judith Force's representation that she had the authority to sell the entire farm. The Force Defendants further claimed that they were entitled to judgment on the Jacksons' request for specific performance. They argued that the parties were mutually mistaken about Judith Force's authority to sell the entire property. The Force Defendants thus asserted that there was no meeting of the minds and no contract existed due to mutual mistake. Finally, they contended that Judith Force signed the June 29, 2011 document as the attorney-in-fact for her mother and no personal liability attached.

{¶ 15} The Jacksons also moved for summary judgment. The Jacksons asserted that the handwritten agreement constituted a "writing" that was "signed by the party to be charged," i.e., Judith Force, and was thus enforceable under R.C. 1335.05, the Statute of Frauds. The Jacksons stated: "Judy Force may not avoid her contract simply because she does not have the ability to convey the entire fee estate. She – with or without reference to her trust – certainly has the ability to convey an undivided one-half interest in the farm and equity will require her to do so – with an appropriate abatement in the price and without preclusion of the Plaintiffs' right to recover damages for breach of contract." The Jacksons further argued that Force's use of the initials "POA" after her name was insufficient to sign

the contract as the attorney-in-fact for her mother. Finally, the Jacksons asserted that, because there was a valid contract between them and Judith Force, the Long Defendants tortiously interfered with that contract. They stated that Curt Long's actions did not fall within "fair competition" because the contract was not terminable at will.

{¶ 16} On February 6, 2014, the trial court denied the Jacksons' motion for summary judgment, granted all defendants' motions for summary judgment and dismissed the complaint. The trial court concluded that the handwritten agreement was unenforceable, because it lacked "mutual assent" and there was "mutual mistake" regarding Judith Force's ability to convey the entire farm. Turning to the specific claims in the complaint, the trial court granted summary judgment to the Force Defendants on the fraud and misrepresentation claim, stating that the Jacksons "had an obligation to inform themselves about the ownership of the property, and had they done so, they would have discovered Judith Force's lack of authority to sell the farm." The court concluded that the Jacksons did not have a right to rely on Force's representation that she had the authority to sell the property. The court also denied the Jacksons' claim for specific performance, stating that "since there is no issue of a material fact that the purported agreement fails as a contract due to lack of mutual assent, this court declines to exercise its discretion to require the Force Defendants to convey their interest in the farm to plaintiffs." Because the court concluded that no enforceable contract existed, it also granted summary judgment to the Long Defendants on the tortious interference claim.

{¶ 17} The Jacksons appeal from the trial court's judgment, raising eight assignments of error.

## II. Alleged Errors in the Trial Court's Recitation of Facts

{¶ 18}   The Jacksons' first, second, and third assignments of error all related to the trial court's recitation of what it found to be undisputed facts.   They state:

The trial court erred in its recitation of the facts concerning the root and nature of the Defendant-Appellee's [Judith Force's] interest in the subject real estate.

The trial court erred in finding that Defendant Judith Force perceived the farm as belonging to Mary Yount when the parties executed the contract.

The trial court erred in finding that Defendant Judith Force had initiated a conversation with Rex Jackson in which she mentioned a desire to sell "her mother's farm."

{¶ 19}      In these assignments of error, the Jacksons claim that the record does not support the following statements by the trial court:

1.  "At some point, Mary Yount had transferred title to the farm *in trust* to her children, Judith Force and Rudy Yount, while retaining a life estate for herself."   (Emphasis added.)

2.  "However, plaintiffs and the Defendant perceived the farm as belonging to Mary Yount when they executed the document at the heart of this litigation."

3.  "Jackson brought the hand written contract to Judy Force following an earlier conversation in which Judith mentioned desiring to sell *her mother's farm*."   (Emphasis added.)

{¶ 20}    First, we agree with the Jacksons that the record does not support the statement that Mary Yount transferred the farm to her children in trust.    Rather, the record demonstrates that Yount transferred an undivided one-half interest in the remainder estate to each of her children, and that Judith Force's interest was placed into the trust established by her and her husband.    Nevertheless, the trial court's misstatement in this regard had no effect on the outcome of the legal issues involved in this case.    Notably, the parties do not dispute who had title and in what capacity on June 29, 2011, when the handwritten contract was signed.

{¶ 21}    Second, the Jacksons contend that the trial court erred in stating, as an undisputed fact, that the parties to the handwritten agreement "perceived the farm as belonging to Mary Yount when they executed the document."    The Jacksons do not contest the statement that Andrew Jackson believed that Mary Yount owned the farm, and he provides reasons for why that belief was reasonable.    The Jacksons claim, however, that there was evidence that Judith Yount understood how the property was actually titled and that she did not believe that the property belonged solely to her mother.

{¶ 22}    Judith Force testified in her deposition that she believed that she had the authority to sell the property when she signed the handwritten agreement.    However, she acknowledges in her brief that she transferred her interest into her and her husband's trust in 2004.    Judith Force further stated that, after signing the handwritten document, she contacted her niece to tell her that the farm was sold; Judith Force indicated that Sperl was the spokesperson for her brother's children.    This statement could indicate either that she knew her brother had a one-half interest in the property or that she believed he had a

potential interest as an heir of her mother's estate when she died. Accordingly, we agree with the Jacksons that there is at least a genuine issue of material fact as to whether Judith Force knew on June 29, 2011 that her mother did not own the farm in its entirety.

{¶ 23} Finally, the Jacksons take issue with the trial court's reference to the property as Judy Force's "mother's farm." The Jacksons argue that "[n]owhere in the record is there any evidence to support an inference that the parties ever intended their agreement to concern only Mary's life estate; all the testimony explicitly refers to 'the farm'." We find no indication that the trial court intended its reference to mean that the Jacksons and Judith Force negotiated for the purchase of Mary Yount's life estate interest. Rather, the phrase appears to recognize simply that Mary Yount owned and resided on the farm for decades and, regardless of the transfer of interests in the property to her children, the property was still thought of as Mary Yount's farm.

{¶ 24} The nature of a person's interest in property can be confusing to many people (law students, attorneys, and judges included), particularly if that interest is not the entire fee estate. It would not be surprising if Mary Yount's children believed that Yount's life estate permitted Yount to sell the entire fee estate during her lifetime and that her children's interest would vest upon her death. Although Judith Force apparently knew that her mother held a life estate, there was no testimony about Force's understanding of that interest. In other words, the record does not resolve whether Force believed that the property was entirely her mother's as a matter of legal ownership, or whether the family referred to the property as Yount's farm as a matter of common parlance.

**{¶ 25}** It does appear to be undisputed that Judith Force believed she had the authority to sell the entire interest in the farm when she approached Rex Jackson about his desire in purchasing it. During the summer of 2011, Force's actions and statements to the Jacksons, friends, the tenant, and even Curt Long reflected her belief that she had sold the farm to the Jacksons and her intent to close on that deal.

**{¶ 26}** The trial court's recitation of facts included certain statements that were disputed, but we do not find that any of these statements affect the merits of the Jacksons' claims. Accordingly, we find the errors to be harmless.

**{¶ 27}** The Jacksons' first, second, and third assignments of error are overruled.

### III. Claim for Specific Performance

**{¶ 28}** The Jacksons' fourth, fifth and seventh assignments of error each relate to the enforceability of the June 29, 2011 agreement and to the Jacksons' claim for specific performance of its terms, in whole or in part. We will address them together. The assignments of error state:

> The trial court erred in finding that the parties' contract lacked the essential element of mutual consent.

> The trial court erred in finding that the contract was the product of mutual mistake.

> The trial court erred in failing to apprehend the true genesis and motivations of Defendants-Appellees, and to apply equitable principles.

### A. Mutual Assent

**{¶ 29}** "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Minster Farmers Coop. Exchange Co., Inc. v. Meyer*, 117 Ohio St.3d 459, 2008-Ohio-1259, 884 N.E.2d 1056, ¶ 28, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976); *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16. The parties must have a "meeting of the minds" as to the essential terms of the contract in order to enforce the contract. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991).

**{¶ 30}** In concluding that the handwritten agreement lacked mutual assent, the trial court stated that, at the time the handwritten contract was signed, the farm

could only be conveyed by (1) Judith and Jack Force, as trustees; (2) the representative of the estate of Rudy Yount, as trustee; and [(3)] Mary Yount, through the power of attorney given to Judith Force. At the time Force signed the contract with the Jacksons, she had the authority under the power of attorney to sell the real estate on behalf of her mother, but she had no express authorization to sign the contract on behalf of her deceased brother's estate. Therefore, the contract lacked the essential element of mutual assent. Mere knowledge of the existence of the contract to sell property does not fulfill the requirement of express consent to the sale.

The plaintiffs argue that Judith told Andrew Jackson that she had the authority to sell the real estate, and there is no dispute that Judy erroneously believed that she had authority through the power of attorney from Mary Yount. However, this shared erroneous conclusion as to Judy's authority has its genesis in the belief that Mary was the only person with an interest in the real estate. Since the farm was vested in multiple parties, Judy was incapable of completing the essential purpose of the agreement, the conveyance of a marketable title to the Jacksons.

{¶ 31} We disagree that the handwritten contract between the Jacksons and Judith Force failed for lack of mutual assent. All parties agree that Judith Force represented that she could sell the entire farm to the Jacksons and she agreed to do so for $850,000. The Jacksons agreed to purchase the entire farm from Force for $850,000. The Jacksons provided a $500 good faith deposit, which Force accepted. After the agreement was signed, both parties took steps to effectuate the sale of the entire property under those terms, and for several months after the agreement was signed, both parties expected the sale to close under those terms.

{¶ 32} The trial court's finding that the contract lacked mutual assent was based on the facts that Judith Force was not authorized to sell the entire fee estate and, consequently, at the time she signed the contract, she could not perform the contract to which she had agreed. While these facts may be relevant to whether there was mutual mistake, they do not negate the fact that the parties entered into the agreement with a meeting of the minds regarding the essential terms of the contract.

### B. Mutual Mistake

{¶ 33}    "The doctrine of mutual mistake permits rescission of a contract when the parties' agreement is based upon a mutual mistake of either law or fact. * * * A mutual mistake is a mistake by both parties at the time the contract was made as to a basic assumption on which the contract was made, which has a material effect on the agreed exchange of performances."  (Citations omitted.)  *Weber v. Budzar Industries, Inc*., 11th Dist. Lake   No. 2004-0L-098, 2005-Ohio-5278, ¶ 34; *Fox & Lamberth Ents., Inc. v. Craftsmen Home Improvement, Inc*., 2d Dist. Montgomery No. 21060, 2006-Ohio-1427, ¶ 62.

{¶ 34} When mutual mistake exists, the contract is voidable by the adversely affected party, unless that party bears the risk of the mistake.  Restatement of Law, Contracts, § 152.  In Ohio, courts have held that "where a vendor's estate is less than or different from that promised in the sales agreement, or where the vendor cannot give the exact subject matter embraced in the contract, a vendee who brings an action for specific performance may waive performance by the vendor in accordance with the contract terms and have the agreement enforced to the extent that the grantor is able to transfer title in compliance with the agreement of sale.  The vendor is estopped from asserting inability to perform since it is the vendee's option to say whether the agreement is to be enforced to the extent that it can be enforced."  Ohio Jurisprudence 3d, Specific Performance, § 60 (Inability to convey entire or sufficient estate); *see also* Ohio Jurisprudence 3d, Specific Performance, § 148 (Specific performance with abatement to plaintiff vendee for

deficiency).   In other words, the risk of mistake is placed on the seller of real estate to know the title and estate that the seller can furnish.

**{¶ 35}**   The record reflects that both parties were mistaken about Judith Force's ability to transfer the entire farm to the Jacksons.   Judith Force stated in her deposition that she believed that she had the full authority to sell the farm to the Jacksons and that she told the Jacksons that she had such authority.   After the agreement was signed, Force told numerous people, including a tenant on the property, that she had sold the farm to the Jacksons, and she had the property surveyed to effectuate the sale.   Regardless of her understanding of how the property was titled, her actions during the summer of 2011 reflected her stated belief that she had the authority to sell the farm to the Jacksons.

**{¶ 36}**   Andrew Jackson testified in his deposition that he believed that Mary Yount owned the farm.   He stated that Mary Yount's father had owned the property, and he (the father) built a second house on the same property, which Yount moved into when she got married.   Jackson stated that Yount had lived on the farm "all her life" and he thought she owned the property in June 2011.   Jackson stated that he knew that Force had a power of attorney for her mother and that Force told him that she had the right to sell the property under a power of attorney.

**{¶ 37}**   The trial court found that there was mutual mistake, reasoning: "Since Judy was incapable of conveying the interest of her deceased brother's estate, the mutual mistake as to her authority frustrated the intention of the parties that she sell and Jackson's [sic] purchase the entirety of the farm."   The trial court concluded that this mutual mistake as to

Judith Force's ability to convey the entire farm rendered the handwritten agreement unenforceable.

{¶ 38} Even accepting that Judith Force and the Jacksons were mutually mistaken as to Force's ability to convey the entire farm, this mistake did not permit Force to unilaterally repudiate the June 29, 2011 agreement. All parties believed that Judith Force had sold the entire farm, although she had the authority to sell only certain interests in the property. Under these circumstances, the Jacksons – not Force – had the option to decide whether to repudiate the contract or, instead, to seek enforcement of the agreement, to the extent that it could be enforced. *See In re Smeller*, 9th Dist. Wayne No. 07 CA 3, 2007-Ohio-2653. In other words, we agree with the trial court that parties were mutually mistaken about Force's ability to sell the entire farm. However, we disagree with the trial court's conclusion that the existence of mutual mistake necessarily renders an agreement unenforceable in its entirety.

## C. Specific Performance

{¶ 39} The Jacksons' seventh assignment of error asserts the trial court should have applied equitable principles and ordered specific performance. The extent to which the June 29, 2011 agreement can, in equity, be enforced depends largely on a determination of what interest(s) Judith Force actually agreed to sell by signing her name "Judith Force POA." Ohio's statute of frauds, R.C. 1335.05, provides: "No action shall be brought whereby to charge the defendant * * * upon a contract or sale of lands * * * or interest in or concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith *

* *." "Agreements that do not comply with the statute of frauds are unenforceable." *Olympic Holding Co., L.L.C. v. ACE Ltd.*, 122 Ohio St.3d 89, 2009-Ohio-2057, 909 N.E.2d 93, ¶ 32.

{¶ 40} R.C. 1335.05 is an evidentiary rule that prevents misunderstandings regarding the sale of land: to some extent, it can override the intent of the parties.

> The purpose of the statute of frauds is to prevent "frauds and perjuries." *Wilber v. Paine* (1824), 1 Ohio 251, 255. The statute does so by informing the public and judges of what is needed to form a contract and by encouraging parties to follow these requirements by nullifying those agreements that do not comply. "[T]he statute of frauds is supposed both to make people take notice of the legal consequences of a writing and to reduce the occasions on which judges enforce non-existent contracts because of perjured evidence." Kennedy, *Form and Substance in Private Law Adjudication* (1976), 89 Harv.L.Rev. 1685, 1691. "In every case, the formality means that unless the parties adopt the prescribed mode of manifesting their wishes, they will be ignored. The reason for ignoring them, for applying the sanction of nullity, is to force them to be self conscious and to express themselves clearly * * *." *Id*. at 1692.

*Olympic Holding Co.* at ¶ 33. Accordingly, Force can be compelled to convey only those interests in the farm that she both (1) agreed to sell in writing and (2) had the authority to sell.

{¶ 41} What interest Judith Force agreed to convey requires a determination of the capacity in which Force signed the June 2011 contract. This is not a matter of belief or intent; rather, it requires a determination of whether the use of "POA" following Force's name was, as a matter of law, sufficient for Force to act under the power of attorney granted by her mother. Force maintains that she acted under her mother's power of attorney when she signed the June 2011 agreement and, thus, she agreed to sell her mother's life estate to the Jacksons (the only interest that her mother had).[2] The Jacksons assert that Force's signature with "POA" after her name was ineffective to sign as an agent for Mary Yount and, thus, Force agreed to sell her own one-half remainder interest in the property.

{¶ 42} At the time the June 29, 2011 contract was signed, R.C. 1337.092 provided, in relevant part:

(A) If an attorney in fact enters into a contract in the representative capacity of the attorney in fact, if the contract is within the authority of the attorney in fact, and if the attorney in fact discloses in the contract that it is being entered into in the representative capacity of the attorney in fact, the attorney in fact is not personally liable on the contract, unless the contract otherwise specifies. If the words or initialism "attorney in fact," "as attorney in fact," "AIF," "power of attorney," "POA," or any other word or words or initialism indicating representative capacity as an attorney in fact are included in a contract following the name or signature of an attorney in fact, the inclusion

---

[2] The power of attorney is not part of the record. We will assume, for sake of argument, that the power of attorney granted Force the authority to convey Yount's real estate and that it complied with all statutory requirements to do so.

is sufficient disclosure for purposes of this division that the contract is being entered into in the attorney in fact's representative capacity as attorney in fact.

{¶ 43} Based on R.C. 1337.092, Force's signature on the June 29, 2011 agreement was only in her capacity as an attorney-in-fact. Force's addition of the initialism "POA" following her name was sufficient disclosure that she was signing in a representative capacity pursuant to a power of attorney. *Contrast, e.g., Baltes Commercial Realty v. Harrison*, 2d Dist. Montgomery No. 23177, 2009-Ohio-5868, ¶ 56 (indicating the requirements for a corporate officer to sign as an agent of the corporation). Force did not separately sign the agreement under her own name, and thus she did not obligate herself to convey her one-half remainder interest in the property.

{¶ 44} There is no question that Andrew Jackson understood that Force was acting under the power of attorney granted by her mother when Force signed the June 29, 2011 agreement. Andrew Jackson testified in his deposition that he knew prior to June 2011 that Force had a power of attorney from her mother. Jackson stated that he included Mary Yount as a party to the contract because "she originally owned it, and Judy says she has the authority by being a Power of Attorney. * * * I just put her in there because I thought it needed to be." Jackson further stated that he included Force's name on the agreement because "[s]he said she's Power of Attorney and she has the right to sell it."

{¶ 45} Because Force signed the June 29, 2011 agreement as Yount's power of attorney, "the party to be charged" for purposes of the statute of frauds was Mary Yount, acting through her attorney-in-fact. The agreement thus obligated Yount to convey her interest in the farm, which on June 29, 2011 consisted of a life estate. Yount has since died,

and the life estate no longer exists. Consequently, albeit for different reasons, the trial court did not err in determining that it would not order specific performance.

{¶ 46} Although we agree with the Jacksons that there was mutual assent and that mutual mistake did not necessarily preclude specific performance, our disposition of their seventh assignment of error regarding the availability of specific performance in this case is dispositive. The fourth, fifth, and seventh assignments of error are overruled.

### IV. Fraud and Misrepresentation

{¶ 47} In their sixth assignment of error, the Jacksons claim that "the trial court erred in finding that [they] were not entitled to rely on Defendant-Appellee's representations." This assignment of error concerns the Jacksons' claim for fraud and misrepresentation.

{¶ 48} A claim for common-law fraud requires proof of the following elements: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Volbers-Klarich v. Middletown Mgt., Inc*., 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶ 27; *Sutton Funding L.L.C. v. Herres*, 188 Ohio App.3d 686, 2010-Ohio-3645, 936 N.E.2d 574, ¶ 49 (2d Dist.).

{¶ 49} The trial court concluded that the Jacksons' claim for fraud failed because they did not have a right to rely on Judith Force's representation that she had authority to sell

the entire farm. The court reasoned that rights of ownership in real property are "matters of public record and are therefore easily discoverable" and that "Ohio courts have held that affirmative misrepresentations regarding property ownership cannot support an action for fraud."

{¶ 50} The Jacksons assert that they were justified in relying on Judith Force's representation that she could sell the farm when they entered into the contract. They emphasize that it is customary for real estate contracts to be entered into before the title is checked, with the expectation that mortgages, encumbrances, and other deficiencies in the title will be resolved at or before closing. The Force Defendants respond that the Jacksons did not justifiably rely on Judith Force's representation of her authority to sell the property and, regardless, the Jacksons admit that Force did not intend to mislead them.

{¶ 51} We need not determine whether the Jacksons justifiably relied on Judith Force's representation that she had authority to sell the property, because there is no genuine issue of material fact that Force lacked an intent to deceive when she signed the June 29, 2011 agreement. Indeed, the Jacksons acknowledge in their brief that "a careful review of the entire record * * * cannot fail to demonstrate that Judith fully intended that the entire farm be sold to the Jacksons on the terms set forth in their agreement and that she persisted in that intention, and acted on it, until Defendant Curtis Long presented her with a 'better offer'[.]" In the absence of evidence that Force misrepresented her authority to sell the farm with an intent to mislead the Jacksons, the trial court did not err in dismissing the Jacksons' claim for fraudulent misrepresentation, regardless of whether the Jacksons' reliance was justified.

{¶ 52}   The Jacksons' sixth assignment of error is overruled.

### V.   Tortious Interference Claim against the Long Defendants

{¶ 53}   The Jacksons' eighth assignment of error states: "The trial court erred in dismissing the Long Defendants from the action."

{¶ 54}   In this assignment of error, the Jacksons assert that, because an enforceable contract existed between Judith Force and the Jacksons, the trial court erred in dismissing the Long Defendants due to the lack of an enforceable contract.

{¶ 55}   For the reasons discussed above, the June 29, 2011 agreement was ineffective to require conveyance of the entire farm to the Jacksons, in accordance with the agreement's terms.  The only portion that the Jacksons could seek to enforce was Mary Yount's agreement, through Judith Force's use of the power of attorney, to convey her (Mary Yount's) life estate.   By the time Curt Long approached Judith Force regarding the status of the farm, Mary Yount had died, which extinguished her life estate.  At that juncture, no portion of the agreement could be enforced.  Therefore, the trial court did not err in dismissing the Long Defendants for lack of an enforceable contract.

{¶ 56}   The eighth assignment of error is overruled.

### VI.   Conclusion

{¶ 57}   The trial court's judgment will be affirmed.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.


Copies mailed to:

John E. Fulker
Christopher D. Clark
Michael J. Valentine
Tyler Tarney
Hon. Christopher Gee