[Cite as *Mishler v. Hale*, 2014-Ohio-5805.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

MARK MISHLER, et al.                           :

     Plaintiffs-Appellees                    :        C.A. CASE NO.     25962

v.                                             :        T.C. NO.     12CV1122

MICHAEL HALE                                   :         (Civil appeal from
                                                        Common Pleas Court)
     Defendant-Appellant            :

                                               :

                           · · · · · · · · · ·

                         **O P I N I O N**

        Rendered on the _____31st_____ day of _____December_____, 2014.

                           · · · · · · · · · ·

NICHOLAS E. SUBASHI, Atty. Reg. No. 0033953 and ANNE P. KEETON, Atty. Reg. No. 0076811, The Greene Town Center, 50 Chestnut Street, Suite 230, Dayton, Ohio 45440
        Attorneys for Plaintiffs-Appellees and Counterclaim Defendants-Appellees

ANTHONY R. CICERO, Atty. Reg. No. 0065408, 500 East Fifth Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

                           · · · · · · · · · ·

FROELICH, P.J.

**{¶ 1}** Defendant-appellant, Michael Hale, appeals from a judgment of the Montgomery County Common Pleas Court which dismissed his counterclaims for specific performance, promissory estoppel and fraud, in favor of the Plaintiffs-appellees, Mark Mishler, Cin-Day Investments, LLC, and Counterclaim Defendants-appellees, William Apostelos and Connie Coleman-Apostelos. For the following reasons, the judgment of the trial court will be affirmed.

## 1. Factual and Procedural History

**{¶ 2}** This appeal involves a dispute between the title owner of a residential home, Mishler, and the person who occupied the home, Hale, for over seven years, from March 13, 2006 to Oct. 31, 2013. The legal issues arise from the terms of two written agreements and an addendum, executed by the parties, which included provisions regarding a lease and an option to purchase. Hale claimed that he exercised the option to purchase in 2007, and that all subsequent payments should be credited toward the purchase price. Mishler claimed that the option to purchase was never exercised and that when the payments ceased he had the right to pursue restitution of the premises through a forcible entry and detainer action. The trial court granted restitution of the premises to Mishler on Sept. 25, 2013. Subsequently, the parties entered in an Agreed Entry in which Hale agreed to vacate the premises on or before Oct. 31, 2013.

**{¶ 3}** The property which is the subject of this action is a residential home located at 80 Park Villa Court, Centerville, Ohio, where Hale resided with his family from 2006 to 2013. Hale initially moved into the house pursuant to an agreement entitled a "Lease with Purchase Option" dated March 13, 2006 (Defense Exhibit C), hereinafter referred to as the "first agreement." At the time he entered into the first agreement, Hale was a licensed real estate agent, and had been working at a local real estate firm for approximately 18 months. Mark

Mishler was the title owner of the property, and Cin-Day Investments, LLC, acted as the property management firm. Mishler has an M.B.A. and 30 years experience in corporate financial management, as a financial analyst, strategic planner and financial controller for several large corporations. Mishler owns approximately 25 houses for investment purposes. Cin-Day is one of several LLC's set up by Mishler to hold property and/or manage the properties. William Apostelos was the person who actually managed the Park Villa property on behalf of Mishler and Cin-Day, and he is the person who brokered a separate agreement with Hale's father, Lee Hale, to reduce the purchase price of the Park Villa property, which led to the execution of a second agreement between the parties.

{¶ 4} At the time of the transactions, Apostelos was a licensed loan officer, and had previously held a real estate broker's license. Apostelos employed Connie Coleman, in an administrative support role for several different business ventures he owned or operated including but not limited to a home remodeling business, a carpet store and rental property management. Later, Apostelos married Connie Coleman, who became Connie Coleman Apostelos, and she became a partner in some of his business ventures.

{¶ 5} The first agreement had a two year term, commencing on May 1, 2006 and ending on May 1, 2008. It required Hale to make monthly payments of $2,000.00, and to assume all expenses for utilities and maintenance of the premises. The agreement prohibited Hale from making any alterations or improvements to the property, without the prior written consent of the Lessor, and any such improvements expressly became the property of the Lessor, unless otherwise provided by a written agreement.

{¶ 6} The terms of the first agreement contain a "purchase option" provision, in

paragraph 31, which states as follows:

> **Purchase Option.** It is agreed that Lessee shall have the option to purchase real estate known as: 80 Park Villa Court, Centerville, OH 45459 for the purchase price of Two Hundred Forty Four Thousand Dollars ($244,000.00) with a down payment of Fifteen Thousand Dollars ($15,000.00) payable upon exercise of said purchase option, and with a closing date no later than 30 days thereafter. This purchase option must be exercised in writing no later than April 30, 2008, but shall not be effective should the Lessee be in default under any terms of this lease or upon any termination of this lease. If Lessee decides not to exercise the purchase option at that time the deposit of Fifteen Thousand Dollars ($15,000.00) is not refundable.

{¶ 7} The first agreement was signed by Connie Coleman[1] and Michael Hale, dated March 13, 2006. Above Connie Coleman's signature was hand written "Cin-Day Investment & Mark Mishler." Attached to the original complaint for restitution of the premises was a different agreement, also dated March 13, 2006, which was nearly identical to the first agreement, except for the terms highlighted below. The signatures on the second agreement are not identical with the first agreement, and are witnessed by a notary. The notary admitted that the signature dates on the second agreement were incorrect, and that it was actually signed sometime after June 5, 2007.

{¶ 8} Two provisions in the second agreement are different than the first agreement. Paragraph 1 of both agreements identifies the obligation to pay monthly rent in the sum of $2,000.00, but the second agreement adds a sentence that states, **"Full Two Thousand Dollars**

---

[1]Counterclaim Defendant, Connie Coleman-Apostelos was not married to William Apostelos at the time this document was executed, and it therefore bears her former name, Connie Coleman.

**($2,000.00) to be applied to the purchase price**."

**{¶ 9}** The language of the option to purchase in the second agreement, at paragraph 31, provides as follows:

Purchase Option**.** It is agreed that Lessee shall have the option to purchase real estate known as: 80 Park Villa Court, Centerville, OH 45459 for the purchase price of Two Hundred Forty Four Thousand Dollars ($244,000.00) with a down payment of Fifteen Thousand Dollars ($15,000.00), **and an interest credit of Two Thousand Dollars ($2000.00) per month for an interest credit total of Forty Eight Thousand Dollars ($48,000.00) and a credit of Eighty One Thousand Dollars ($81,000.00) for upgrades and renovations done to the property**, payable upon exercise of said purchase option, **for a final sale price of One Hundred Thousand Dollars ($100,000.00) and** with a closing date no later than 30 days thereafter. This purchase option must be exercised in writing no later than April 30, 2008 but shall not be effective should the Lessee be in default under any terms of this lease or upon any termination of this lease. If Lessee decides not to exercise the purchase option at that time the deposit of Fifteen Thousand Dollars ($15,000.00) is not refundable.

| | |
|---|---|
| **$244,000.00** | **Purchase price** |
| **-48,000.00** | **Interest credit** |
| **-81,000.00** | **Upgrades and renovations** |
| **-15,000.00** | **Down payment received** |
| **$100,000.00** | **Final Sale Price** |

**{¶ 10}** In response to the motion for summary judgment, Hale claimed that the change

in terms from the first agreement to second agreement was precipitated by a separate business transaction between his father, Lee Hale, and William Apostelos, which included an agreement to reduce the purchase price of the Villa Park residence. The record contains a "RELEASE OF LEASE & NOTE" that is dated June 5, 2007. The Release is signed by "LEE HALE, LEASOR & NOTE HOLDER" and "CONNIE COLEMAN, PRESIDENT CARMEN-COLEMAN, INC. LEASEE & NOTE BORROWER." The Release provides:

> I, LEE HALE, PRESIDENT OF L & H REAL ESTATE, LLC, AGREE TO RELEASE THE LEASE & NOTE DATED MAY 31, 2006 SIGNED BY CARMEN-COLEMAN, INC AND PERSONALLY GAURANTEED [SIC] BY WILLIAM APOSPELOS [SIC] CONCERNING "DELTA CARPET" (the Business Note) AND 4521 FREDERICK PIKE (the Leased Property) UPON THE FOLLOWING TERMS:
>
> 1. A NEW LEASE PURCHASE AGREEMENT FOR 80 PARK VILLA COURT IN CENTERVILLE, OHIO, IN THE AMOUNT OF $100,000.00
>
> 2. ALL ASSETS FOR DELTA CARPET IS [SIC] TURNED BACK OVER TO LEE HALE, WITH THE EXCEPTION OF ONE COMPUTER.

{¶ 11} The "Release of Lease and Note" is not signed by anyone identified as a representative of Cin-Day Investments, Mishler or Michael Hale. The terms of the "Release of Lease and Note" relating to the Villa Park property also do not match the terms of the second agreement, nor the terms of an addendum to the agreement, dated Jan. 7, 2009.

{¶ 12} An "ADENDUM [SIC] TO LEASE WITH PURCHASE OPTION" was signed by Hale, and a representative of the Lessee[2], Cin-Day Investments, LLC on January 7, 2009.

---

[2]The name of the representative who signed the addendum on behalf of the Lessee is not discernable.

The addendum provides, in part:

> FOR: 80 Park Villa Court Centerville, OH 45459
>
> Beginning purchase amount $144,000.00.
>
> Monthly rental amount to change from $2000.00 to $1000.00 with purchase price to adjust up monthly starting in February 2009.

{¶ 13} The addendum also shows a schedule setting forth the month, year, previous rent amount, new rent amount, old purchase price, and new purchase price beginning in February 2009 and ending in May 2011. The schedule states that as of February 2009, the rental amount was $1,000.00, the old purchase price was $144,000.00, and the new purchase price was $145,000.00. The last date on the schedule, May 2011, reflects that the new rent amount remained at $1,000.00, the old purchase price was $171,000, and the new purchase price was $172,000.00.

{¶ 14} Plaintiffs' motion for summary judgment asked for a judgment on their claim for restitution of the premises, and to dismiss all of Hale's counterclaims. The motion for summary judgment was supported by the depositions of Hale, Connie Coleman-Apostelos, William Apostelos, Carolyn Prater (the notary), and Defendant's answers to interrogatories and request for admissions. Hale's response to the motion was supported by the same depositions, plus the deposition of Mishler. Hale relied on statements from his own deposition to support his claim that he exercised the option to purchase the house in 2007, plus the deposition of his father, Lee Hale, and the following testimony from the deposition of William Apostelos:

> Q: Okay, so you made this deal, and the deal calls for a new purchase agreement of a hundred thousand dollars, correct?

A. What the paper says, that it calls for that. My agreement with him was that he got a hundred off, it was forty-four.

{¶ 15} . The deposition of William Apostelos contains no other statement or admission that the parties had converted the lease to a purchase contract. Hale testified in his deposition that he exercised the option to purchase the property in 2007 when he signed the second agreement. Hale stated that he believed he had become the owner of the Park Villa property pursuant to a land contract. Hale did not produce any other written document which memorialized a purchase contract between Hale and Cin-Day or Mishler to purchase the property. Hale also testified in his deposition that he lived in the house as if he owned it by handling all general maintenance, adding walls to create another bedroom on the first floor and renovating the basement and upstairs hall bathroom.

{¶ 16} In ruling on the motion for summary judgment, the trial court viewed the evidence in the light most favorable to the non-moving party, Hale, and assumed that the second agreement was valid, even though the plaintiffs asserted that the signature of Connie Coleman was a forgery. The trial court concluded that, as a matter of law, Hale was prevented by the statute of frauds from enforcing a purchase contract that did not exist in writing, and was prevented by the parol evidence rule from using oral statements to alter the terms of the written contract. The trial court further found that Hale's counterclaims for both fraud and promissory estoppel failed because Hale could not prove the essential element of reliance.

{¶ 17} By granting summary judgment, the trial court found no genuine issue of material fact that Hale had defaulted on the lease agreement and that plaintiffs were entitled to restitution of the premises. The court also found that Hale did not rely on any

misrepresentations or promises that the agreements would be amended to reflect that he had purchased the property or that the agreement had been converted to a land installment contract. Subsequent to the grant of summary judgment dismissing Hale's counterclaims, an entry of the trial court acknowledged that Hale agreed to vacate the property on or before Oct. 31, 2013.

{¶ 18}   In his sole assignment of error, Hale claims that "the trial court erred in granting summary judgment to Appellees on [his] counterclaims."   This assignment of error does not raise any challenge to the trial court's judgment to plaintiffs for restitution of the premises based on their forcible entry and detainer complaint.

## II. Summary Judgment Standard of Review

{¶ 19}   When reviewing a trial court's grant of summary judgment, an appellate court conducts a de novo review.   *Village of Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).   "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial."   *Brewer v. Cleveland City Schools Bd. Of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980).   Therefore, the trial court's decision is not granted any deference by the reviewing appellate court.   *Brown v. Scioto Cty. Bd. Of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993).

{¶ 20}   In a summary judgment proceeding, the moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988).   To prevail the movant must be able to point to evidentiary materials of the type specified in Civ.R. 56(C) that a court may

consider in rendering summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). Those materials include "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, filed in the action." *Id.* at 293; Civ.R. 56(C).

{¶ 21} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

{¶ 22} Construing the evidence in Hale's favor, the trial court found that the second agreement was in fact prepared and signed by the parties to reflect the separate agreement between Apostelos and Lee Hale, to reduce the purchase price of the Park Villa property to $100,000. Paragraph one of the second agreement did provide that the full monthly payments of $2,000.00 would be applied to the purchase price. However, the addendum to the agreement, signed in 2009, changed the monthly payment to $1,000.00 per month, and also contained terms that increased the purchase price each month by $1,000.00. There are no other written documents which identify the terms of any agreement between the parties with respect to the purchase of the Park Villa property.

### III. Counterclaim for Specific Performance

{¶ 23} In his first counterclaim, Hale sought a remedy of specific performance, which would force the plaintiffs to complete the sale of the property to Hale. To obtain the remedy of

specific performance, a party must be able to prove the existence of a valid contract. The remedy of specific performance is available when the promisor's failure to perform constitutes a breach of contract and a legal remedy for that breach, such as money damages, will not afford the promisee adequate relief. *Gehret v. Rismiller*, 2d Dist. Darke No. 06CA1705, 2007-Ohio-1893, ¶14. In general, a contract to purchase real estate may be enforced by specific performance. *Id.*

{¶ 24} "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Minster Farmers Coop. Exchange Co., Inc. v. Meyer*, 117 Ohio St.3d 459, 2008-Ohio-1259, 884 N.E.2d 1056, ¶ 28, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976); *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58,¶ 16. The parties must have a "meeting of the minds" as to the essential terms of the contract in order to enforce the contract. *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991).

{¶ 25} The statute of frauds in Ohio provides that contracts for the purchase or lease of real property must be in writing. R.C. 1335.04. The land installment contract statute in Ohio also requires a written contract. R.C. 5313.01. There is no dispute of fact that there is no written document which verifies Hale's exercise of his option to purchase the property, either through a new purchase contract or a land contract.

{¶ 26} On appeal, Hale claims that an exception to the statute of frauds applies which, as a matter of law, makes an oral agreement between the parties enforceable. Two exceptions

exist to the statute of frauds: part performance and promissory estoppel. In order to establish part performance, a party must show: 1) evidence of a change in who possesses the land; 2) payment of all or part of the consideration for the land; and 3) improvements, alterations, or repairs on the land. *Lowe v. Philips,* 2d Dist. Montgomery No. 20590, 2005-Ohio-2514, ¶ 20, citing *Areawide Home Builders, Inc. v. Hershberger Construction, Inc.,* 9th Dist Summit No. 18514, 1998 WL 65476 (Feb. 4, 1998). The party asserting part performance must have undertaken acts that "changed his position to his detriment and make it impossible or impractical to place the parties in status quo." *Id.,* quoting *Beaverpark Associates v. Larry Stein Realty Co.*, 2d Dist. Montgomery No. 14950, 1995 WL 516469 (Aug. 30, 1995); *Delfino v. Paul Davies Chevrolet, Inc.*, 2 Ohio St.2d 282, 287, 209 N.E.2d 194 (1965).

{¶ 27} Hale presented evidence that he had possession of the house, but this was not a change from the possession he held as a lessee. Hale also presented evidence that he had made monthly payments, which both parties expected to apply to the purchase price of the house when the option to purchase was exercised. Hale also presented evidence that he made improvements to the house, but the second agreement gave him credit for such improvements by reducing the purchase price of the property if and when the option to purchase was exercised. There is no evidence that Hale took any action, after he signed the second agreement that "changed his position to his detriment and [made] it impossible or impractical to place the parties in status quo." *Delfino* at 287. In fact, the addendum supports the position that the parties were maintaining the "status quo" by allowing the option to purchase to continue through May, 2011. The only change in position was not to Hale's detriment, when he asked to lower the monthly payments, which was documented in the addendum.

## IV. Counterclaim for Promissory Estoppel

{¶ 28}   In his second counterclaim, Hale sought to enforce the oral agreement for a land installment contract to purchase the Villa Park property on the basis of promissory estoppel.   To prove a claim for promissory estoppel, the party must prove the following elements: 1) a clear and unambiguous promise, 2) reliance by the party to whom the promise is made, 3) the reliance must be reasonable and foreseeable, and 4) the party relying on the promise must have been injured by the reliance. *HAD Ents. v. Galloway*, 192 Ohio App. 3d 133, 2011-Ohio-57, 948 N.E.2d 473, ¶ 22 (4th Dist.).   The issue of whether the plaintiffs made a clear and unambiguous promise is a question of fact.   *Id.* at ¶ 23. The trial court determined, as a matter of law, that Hale was barred by the parol evidence rule from introducing any alleged oral representations regarding the purchase of the Park Villa property.

{¶ 29}   The parol evidence rule "is a rule of substantive law that prohibits a party who has entered into a written contract from contradicting the terms of the contract with evidence of alleged or actual agreements. When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing."   *Williams v. Spitzer Autoworld Canton, L.L.C.,* 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, ¶14.   The parol evidence rule bars extrinsic evidence of prior oral representations that contradict the parties' final written contract. *Id.* at   ¶17.

{¶ 30}   While the parol evidence rule applies to completely or fully integrated contracts, it does not apply to partially integrated contracts. *Williams* at *¶ 28.*   A contract is partially

integrated if the parties adopt it as a final expression of only one portion of a larger agreement, making the contract incomplete. *McGonagle v. Somerset Gas Transm. Co.*, 10th Dist. Franklin No. 11AP-156, 2011-Ohio-5768, ¶19. A party may introduce extrinsic evidence to supplement, but not to vary or contradict the written terms of a partially integrated contract. *Williams at ¶ 28; McGonagle* at ¶ 19.

{¶ 31} In the present case, the second agreement, with its addendum, is a fully integrated contract, so no extrinsic evidence may be introduced to contradict its terms. Even if the addendum were considered a partially integrated contract, oral representations which allegedly convert the agreement to a land installment contract would significantly vary its terms, not just supplement the terms. The second agreement is a lease contract with the option to purchase, not a land installment contract, and there is no admissible evidence to support a finding that Hale exercised his option to purchase in accordance with the terms of the agreement. The trial court properly found, as a matter of law, that Hale cannot introduce any oral representation or promise that contradicts the terms of the second agreement. Without proof of the alleged promise, Hale failed to establish the first element of his counterclaim for promissory estoppel.

## V. Counterclaim for Fraud

{¶ 32} In his third counterclaim, Hale raised a cause of action based on fraud. A claim for common-law fraud requires proof of the following elements: 1) a representation or, where there is a duty to disclose, concealment of a fact, 2) which is material to the transaction at hand, 3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, 4) with the intent of misleading another into relying upon it, 5) justifiable reliance upon the representation or concealment, and 6)

a resulting injury proximately caused by the reliance. *Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶ 27; *Jackson v. Force,* 2d Dist. Miami No. 2014-CA-6, 2014-Ohio-3167, ¶ 48. The parol evidence rule does not preclude a party from presenting evidence that it was fraudulently induced to enter into a contract, if the fraudulent promise is independent of the contract terms, or consistent with the contract terms. *Woods v. Cobbins*, 2d Dist. Montgomery No. 20295, 2004-Ohio-5767, ¶ 20. Based on this exception to the parol evidence rule, Hale would not be precluded from introducing evidence of an oral representation to proceed with a fraud in the inducement claim. However, even if Hale presented evidence of a false representation by Apostelos, there is no genuine issue of material fact as to whether Hale justifiably relied on such representation.

**{¶ 33}** The question of justifiable reliance is one of fact, and the court must inquire into the relationship between the parties. *Crown Property Dev., Inc. v. Omega Oil Co.,* 113 Ohio App.3d 647, 657, 681 N.E.2d 1343 (12th Dist.1996). The court must consider the nature of the transaction, the form and materiality of the representation, the relationship of the parties and their respective means and knowledge, as well as other circumstances. *Hubbard Family Trust v. TNT Land Holdings, LLC*, 2014-Ohio-772, 9 N.E. 3d 411, ¶ 30 (4th Dist.).

**{¶ 34}** For whatever reason, the parties chose not to utilize attorneys in the negotiations or formalization of any of the agreements. Regardless, as recognized by the trial court, the parties to this action are real estate professionals. At the time of the transaction, Hale was a licensed real estate salesperson, which requires knowledge of real estate law and real estate finance. R.C. 4735.09 (F)(6). Mishler has had a long career in corporate financial management, and owns approximately 25 houses for investment purposes. At the time of the transaction, Apostelos was a

licensed loan officer and had previously held a real estate broker's license. The nature of the transaction at issue is the purported conversion of a lease with a purchase option to a land installment contract, which are distinctly different contracts, governed by different laws, and thus required distinctly different provisions and disclosures. Compare R.C. Chapter 5321 with R.C. Chapter 5313.

{¶ 35} Hale has not pointed to any specific statement made by Mishler, Apostelos or any other representative of Cin-Day that specifically promised or acknowledged that the second agreement was actually a land installment contract. The statement made by Apostelos in his deposition simply stated that he agreed to reduce the purchase price to $100,000. All of the documents presented to the court referred to an option to purchase which required certain steps to exercise that option. There was no evidence presented that Hale exercised the option to purchase, or that the parties entered into a land installment contract.

{¶ 36} In determining the issue of justifiable reliance it is significant to note that Hale, as a licensed real estate salesperson would know the difference between a lease agreement and a land installment contract, and that he had a duty to read the document he signed and understand that he was bound by its terms. The Ohio Supreme Court recognizes the "legal and common-sensical axiom that one must read what one signs." *ABM Farms v. Woods,* 81 Ohio St.3d 498, 503, 692 N.E.2d 574 (1998). "A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed." *Ball v. Ohio State Home Servs., Inc.*, 168 Ohio App.3d 622, 627-28, 2006-Ohio-4464, 861 N.E.2d 553, 557, ¶ 11 (9th Dist.), quoting *McAdams v. McAdams*, 80 Ohio St. 232, 240–241, 88 N.E. 542, 544 (1909).

{¶ 37} " '[W]hen reviewing a motion for summary judgment, a court must be careful not to weigh the evidence or judge the credibility of witnesses. * * * Instead, it must consider all of the evidence and reasonable inferences that can be drawn from the evidentiary materials in favor of the nonmoving party.' " *Wheeler v. Johnson*, 2d Dist. Montgomery No. 22178, 2008-Ohio-2599, ¶ 28. The factual materials, construed in Hale's favor, do not support any finding that Hale justifiably relied on any statement, conduct or document to conclude that the agreement had converted to a land installment contract. When the evidence does not exist, the court is not engaged in weighing the evidence or judging credibility. Hale failed to present a genuine issue of fact that he justifiably relied on any oral misrepresentation.

{¶ 38} Accordingly, we find that Hale did not meet his reciprocal burden of responding to Plaintiffs' and Counterclaim Defendants' motion for summary judgment with sufficient evidentiary materials to establish a genuine issue of material fact. The trial court properly granted summary judgment in favor of the Plaintiffs and the Counterclaim Defendants and dismissed Hale's counterclaims.

{¶ 39} The trial court's judgment will be affirmed.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Nicholas E. Subashi
Anne P. Keeton
Anthony R. Cicero
Hon. Barbara P. Gorman